Argued and submitted January 25, affirmed March 22, 1989

SILVER EAGLE MFG. COMPANY,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(88-AB-965; CA A49255)

770 P2d 607

Larry K. Amburgey, Portland, argued the cause and filed the brief for petitioner.

No appearance for respondent Employment Division.

No appearance for respondent Patric J. Borst.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

In this unemployment compensation case, employer seeks review of an Employment Appeals Board order setting aside the referee's decision and awarding claimant benefits on the ground that he had been discharged. We affirm.

The referee made these findings of fact:

"(1)   The claimant worked for the employer for three and one-half years until February 29, 1988. (2)   He was employed as the production and materials manager and was paid $3,350 per month.

"(3)   The claimant was placed on a 90-day probation February 16 because the employer was dissatisfied with his work performance. (4)   In part the employer was critical of the way he dealt with employes. (5)   The employer wanted employes to have a say in the business. The claimant believed that he told the employes what to do.

"(6)   The claimant felt he could not improve employer/employe relationships. (7)   On February 18, the claimant told the employer he was stressed. (8) He was assured things could be worked out.

"(9)   The claimant expressed the thought of leaving on or about February 25. (10)   He was given February 26 off so he could think about the decision. (11)   On February 29 he indicated that he was quitting and gave two weeks notice. (12)   He and his employer discussed the leaving. It was determined that he would depart immediately and receive severance pay of 45 days.

"(13)   After the evaluation of February 16 the claimant experienced trouble sleeping. He would awake at 4 to 5 a.m. thinking about work and would be unable to go back to sleep."

On the basis of those facts, the referee concluded that claimant had voluntarily left work without good cause.

EAB adopted the referee's findings, except for number (12), and made two additional findings:

"(2)   The employer told claimant not to work for the two-week notice period, but to end employment as of February 29, 1988. The employer gave claimant 45 days severance pay. (3)   Claimant was willing to work for the employer for the duration of his two-week notice period."

EAB cited OAR 471-30-038(2) in support of its conclusion

that claimant had been discharged. It also concluded that the discharge was not related to misconduct, but was related to employer's convenience. See ORS 657.176(2)(a).

■    Employer contends that EAB's finding that it "told claimant not to work for the two-week notice period, but to end employment as of February 29, 1988," is not supported by substantial evidence, because that fact is contradicted by testimony that claimant continued to receive paychecks after that date. For the same reason, it also contends that EAB misapplied OAR 471-30-038(2).

EAB's finding is supported by substantial evidence. Claimant testified that, after he announced his resignation and gave two weeks notice, employer's president told him that

> "it would not be necessary to give two weeks' notice, that he thought best for all concerned that [claimant] end [his] employment that day, and that he would give [claimant] 45 days severance pay, and requested that [claimant] write a letter of resignation, stating that that date would be [his] final day."

Employer's president also testified that he told claimant:

> " 'No, let's do this. Let me—let me continue your compensation for 45 days, continue your Blue Cross, your medical, buy some time; and there's really, if it's as stressful, there's no need to stay around.' I don't think it's certainly good for him and it isn't good for us. So we did that. We agreed to continue his compensation for a period of 45 days."

The term "employment," as used in the findings, refers to the termination of services. The fact that claimant was to receive paychecks for several weeks after the date that his services were terminated does not contradict the Board's finding. Further, EAB did not disregard the testimony that claimant continued to be on employer's payroll. In its finding number (2) it also found that claimant was to receive 45 days severance pay.

■    The remaining issue is whether, under the facts found by EAB, claimant was "discharged" or whether his departure was a "voluntary leaving" under ORS 657.176, which provides, in relevant part:

> "(2)   An individual shall be disqualified from the receipt

of [unemployment compensation] benefits * * * if * * * the individual:

"(a)    Has been discharged for misconduct connected with work, or

"* * * * *

"(c)    Voluntarily left work without good cause * * *."

Division has defined those terms in OAR 471-30-038, which provides, in part:

"(2)    The distinction between voluntary leaving and discharge is:

"(a)    If the employe could have continued to *work* for the same employer for an additional period of time the separation is a voluntary leaving of work.

"(b)    If the employe is willing to continue to *work* for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge." (Emphasis supplied.)

The rule does not refer to the payment for services as a factor to be considered in distinguishing between the two terms. The term "work" in subsections (a) and (b) has been interpreted by EAB to mean the performance of services. That is a reasonable interpretation, given the express language of the rule. According to the findings, claimant was willing to work for employer for the two-week notice period, but employer would not allow him to do so. Those facts fit within subsection (b) of the rule. *See Employment Division v. Scott Machinery,* 48 Or App 61, 67, 616 P2d 521 (1980). EAB did not err in concluding that claimant had been discharged for reasons unrelated to misconduct.

Affirmed.