Argued and submitted July 12, 1993, affirmed May 4, 1994

Ted T. BETTIS,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Linnton Plywood Association,
*Respondents.*

(92-AB-2120; CA A77666)

874 P2d 96

Kevin M. Myles argued the cause and filed the brief for petitioner.

Jas. Adams, Assistant Attorney General, argued the cause for respondent Employment Division. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Linnton Plywood Association.

Before Deits, Presiding Judge, and Rossman and Riggs,* Judges.

DEITS, P. J.

---

* Riggs, J., *vice* Durham, J.

**DEITS, P. J.**

Claimant seeks review of an order of the Employment Appeals Board (EAB) affirming a referee's denial of benefits on the ground that claimant voluntarily left work without good cause. ORS 657.176(2)(c); OAR 471-30-038(4). We affirm.

Claimant worked as a green-chain puller for employer from March, 1985, to September 4, 1991. Employer is a cooperative plywood mill that requires each employee to own at least one share of stock. When claimant began working for employer, he contracted with former employee Hruby to purchase Hruby's share for $72,000, to be paid in monthly installments. Claimant's status as a shareholder was recorded in employer's books on April 1, 1985.

Claimant began having financial problems in 1990. In September, 1990, employer's own financial troubles caused it to eliminate all overtime, thereby substantially reducing claimant's hours of work. By January, 1991, claimant's advance wages had been cut in two steps from $11 an hour to $9 an hour. Although claimant earned $21,000 in advance wages in 1990, his net income was just over $11,000 because of losses incurred by employer. Employees were paid advances based on employer's anticipated annual earnings. At the end of the fiscal year, the employees' compensation was adjusted to account for employer's actual profits or losses. In 1990, claimant's profit sharing was reduced by almost $10,000 to service employer's debt. Claimant's monthly payments to Hruby gradually dropped from $500 to $150. In August, 1991, when he still owed $55,000 on his share, claimant was unable to make a payment to Hruby. Hruby told claimant that he could not work for employer if he was not paying on his share. Claimant then consulted with a bankruptcy attorney who told him that it would be unwise for him to continue working for employer.

In late August or early September, claimant and Hruby verbally agreed that claimant would return his share to Hruby. Claimant made no further payments to Hruby. Soon after, on September 4, 1991, claimant quit his job at the co-op. On October 8, claimant filed a Chapter 7 bankruptcy petition. On October 11, employer shut down the plant and

laid off all employees. On October 21, Hruby and his wife presented the stock certificate to employer and had the ownership transferred into their names.

EAB denied claimant unemployment benefits on the ground that he voluntarily left suitable work without good cause. ORS 657.176(2)(c). Under the statute, good cause is

"such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. *The reason must be of such gravity that the individual has no reasonable alternative but to leave work.*" OAR 471-30-038(4). (Emphasis supplied.)

EAB concluded that, under the circumstances, a reasonable and prudent person would not have left work and, therefore, claimant did not have good cause for doing so.

■ ■ On review, we examine the record to determine whether EAB's findings are supported by substantial evidence. Next, we determine whether there is a rational relationship between EAB's findings and its legal conclusion. *Crane v. Employment Division*, 118 Or App 392, 847 P2d 886 (1993). Although we may disagree with EAB's conclusions, we will not overturn them so long as there is a rational relationship between the agency's findings and its legal conclusions. *Erne v. Employment Div.*, 109 Or App 629, 632, 820 P2d 875 (1991).

■ Claimant does not challenge EAB's factual findings, nor does he challenge its conclusion as to the suitability of the work; he argues only that EAB erred in concluding that he lacked good cause to leave work. He contends that EAB erred in reaching that conclusion, because he had sound reasons for leaving work when he did. He asserts that he had no reasonable alternatives, that quitting was the only way that he could "cut his losses" and, because of that, he had good cause to leave work.

Among the sound reasons for leaving on which claimant relies is that his continued employment with employer would exacerbate his financial difficulties because, as a shareholder, his share of employer's increasing debt would count against his shareholder's equity account. That argument is based on the assumption that the date on which claimant quit work, rather than the date of the official stock transfer, was

when employer's profits and losses were no longer charged against claimant's equity account. The problem with claimant's argument is that he offered no evidence and, consequently, EAB made no findings regarding when his participation in employer's profits and losses ended. Because it was claimant's burden to establish that fact, his failure to do so prevents him from relying on it to support his contention that it was necessary for him to quit work to stop his increasing indebtedness to employer.

Claimant also argues that it was reasonable for him to leave when he did because "he had nothing to gain by paying additional monies to Hruby on the share." However, that argument also is not persuasive because, according to EAB's findings, claimant did not have to continue to make the payments in order to continue working. As EAB found, and claimant does not challenge, claimant did not make any payments on his share after July, 1991, and yet he continued to work until September 4. EAB found that he could have continued working for employer until his share was transferred, or at least until October 11, when employer shut the plant down and all employees were laid off.

Claimant also contends that he had sound reasons for leaving because he thought that once he surrendered the share to Hruby he could no longer work for employer, or at least that it would not be "right" to continue to work under those circumstances. Claimant argues that in reaching this understanding, he relied on the advice of Hruby and that it was reasonable for him to do so. However, again, EAB's findings do not support claimant's argument. As discussed above, EAB found that he could have continued to work until his share was transferred on employer's books and that he did not ask anyone except Hruby about the possibility of continuing to work for employer.[1] EAB concluded:

---

[1] We do not mean to imply that any employee who leaves suitable work before being required to do so lacks good cause to quit. OAR 471-30-038(2)(a) provides that a separation is a voluntary leaving of work "[i]f the employe[e] could have continued to work for the same employer for an additional period of time." Under most circumstances, the fact that claimant quit even though he could have continued to work would mean only that he voluntarily left, not that he lacked good cause to do so. However, claimant argues that he had good cause to quit because, among other reasons, he believed that he was not entitled to continue working. Thus, EAB's finding that claimant "could have" continued to work is material to the issue of whether claimant had good cause to leave when he did.

"Claimant could have continued working for the employer until his share was transferred to the seller on October 21, or at least until the plant shut down on October 11. Claimant's reliance on the seller's statement that he could not continue working was not reasonable. As a six-year employee, claimant knew that employment was contingent on ownership of a share of stock. He also knew that he was still the legal owner of the share when he left work. If it were true that he could not work for the employer unless he was making payments on the share, then he would have had to leave when he did not make his August payment. Yet he continued working into early September. The record contains no evidence that anyone in authority told him at any time that he had to leave. Nor did claimant ask anyone besides the seller of his stock whether he could continue working. He did not explore his alternatives to leaving. *We conclude that a reasonable and prudent person would not have relied on the advice the seller gave claimant, and would not have left work.*" (Emphasis supplied.)

We conclude that EAB's findings and reasons support its conclusion that claimant's reasons for leaving were not of such gravity that he had no reasonable alternative but to leave work. EAB did not err in concluding that claimant left work without good cause.

Affirmed.