Submitted May 6, reversed and remanded for reconsideration August 17, 2011

Karen E. WARKENTIN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Northwest Cardiologists,
*Respondents.*

Employment Appeals Board
10AB2611; A146883

261 P3d 72

Karen E. Warkentin filed the brief *pro se.*

Denise G. Fjordbeck waived appearance for respondent Employment Department.

No appearance for respondent Northwest Cardiologists.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Claimant seeks judicial review of a decision by the Employment Appeals Board (board) that disqualified her from receiving unemployment insurance benefits because she voluntarily left her employment without good cause. ORS 657.176(2)(c). Claimant contends that the decision is not supported by substantial evidence. ORS 183.482(8)(c). We agree and, accordingly, reverse and remand.

We take the facts from the board's findings and from the undisputed evidence in the record that is not inconsistent with those findings. Claimant was employed by Northwest Cardiologists (employer) as a patient coordinator at employer's St. Vincent's office in May 2007. The office consisted of four physicians, a medical assistant, and claimant.

Claimant was solely responsible for providing administrative assistance to the physicians. Her work consisted of scanning documents, preparing patient charts, answering eight incoming phone lines, checking patients in and out, transcribing dictation, and managing the physicians' schedules. In addition to her clerical duties, claimant was also responsible for bookkeeping and insurance billing for one of employer's physicians, who kept a separate practice at the St. Vincent's office. At employer's other office in Hillsboro, which also consisted of four physicians, two employees performed the tasks that claimant completed by herself at the St. Vincent's office.

Claimant noticed that the quality of "patient care" she provided began to decrease due to the high volume of work. She repeatedly asked employer's bookkeeper and the physicians for additional support staff to help manage the heavy workload. Each time, her plea was rebuffed, and she was consistently told that the practice could not afford to hire additional help. Eventually, a part-time employee was hired to work eight hours per week. That assistance helped, but claimant still could not keep up with her assigned work and fell behind. In May 2010, the part-time employee quit, and claimant was again solely responsible for staffing the St. Vincent's office.

Thereafter, claimant continued to ask for additional support staff. Notwithstanding the repeated denials of those requests, claimant attempted to rectify the situation. She began to divert phone calls to the better-staffed Hillsboro office so that she could check patients in and out, a process that could be interrupted by as many as five phone calls. However, the fourth time she did this, the Hillsboro office told claimant she could no longer divert the phone calls because they could not handle the increased workload.

As a result, claimant felt overwhelmed. She could not sleep, became depressed, suffered severe migraines, and would occasionally sob at work. In 2005, before she worked for employer, claimant had attempted suicide. She testified that her work-related stress while working for employer caused her mental and emotional health to deteriorate to the same point as when she had attempted suicide. Claimant also testified that she could not request time off to seek help for her medical issues because she knew employer did not have the staff to cover her request and she did not have enough sick leave to get time off. In addition, claimant testified that her previous requests for vacation or education leave were not approved due to understaffing and the heavy workload.

In early June 2010, the St. Vincent's office moved to a larger work facility. The disruption of the office move caused claimant's work to accumulate further. The new facility was larger and another provider agreed to rent space from employer. In addition to the work she was already performing, claimant was expected to assist the new provider's practice.

Claimant's last day of work was June 8, 2010. When claimant arrived in the morning, three stacks of paper, each two feet in height, and 105 messages were on her desk waiting to be returned. Claimant, wanting to reduce the backlog of work sitting on her desk, again went to the bookkeeper to request overtime. The bookkeeper denied the request and told claimant that she would not be so backed up if she worked more efficiently. In response, claimant returned to her desk; the bookkeeper followed her, scolded claimant for walking away, and accused claimant of not transferring

phone calls and spending too much time with the patients. Claimant quit immediately and left the clinic. Thereafter, employer hired four new employees to perform the work that claimant had performed by herself.

Claimant later sought unemployment benefits. The Employment Department denied benefits on the ground that claimant had voluntarily left work without good cause, ORS 657.176(2)(c). Claimant requested and received a hearing before an administrative law judge (ALJ). Employer did not appear or offer evidence at that hearing. The only evidence offered at the hearing came from claimant, who testified to the facts set forth above. The ALJ concluded that claimant was not subject to disqualification of employment benefits and set aside the department's order. The ALJ reasoned that "claimant faced a grave situation and pursued reasonable alternatives to quitting" and that "a reasonable person would have left work under similar circumstances."

Employer appealed to the board. Similar to the ALJ, the board found that claimant's workload was "onerous." However, the board set aside the ALJ's order and disqualified claimant from receiving benefits. According to the board, claimant did not have good cause to leave work, because she had reasonable alternatives to quitting. The board suggested that three reasonable alternatives were available to claimant:

> "Claimant had the alternative of working as diligently as she could and letting work remain backlogged if she could not reach it. If claimant's depression and stress over her work made it difficult for her to continue on with the backlogged work, she had the option of requesting a leave of absence from employment while she pursued medical or psychological treatment. Claimant had the additional option of looking for new employment either while she was working or during a leave of absence. Because claimant did not exhaust these reasonable options before deciding to leave employment, she did not establish good cause for quitting work when she did."

On review, claimant argues that those findings by the board were not supported by substantial evidence in the record. ORS 183.482(8)(c) requires an appellate court to set

aside or remand an agency order when the order is not supported by substantial evidence in the record. The statute further provides, "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." Claimant further contends that, even if the board's findings are supported by the record, they are nonetheless insufficient, as a matter of law, to establish that she voluntarily left work without good cause. We conclude that the findings are defective for both of those reasons.

ORS 657.176(2)(c) provides that "[a]n individual shall be disqualified from the receipt of benefits * * * if the [Employment Department] finds that the individual: * * * [v]oluntarily left work without good cause." OAR 471-030-0038(4) defines "good cause" as follows:

> "Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. * * * [T]he reason must be of such gravity that the individual has no reasonable alternative but to leave work."

"Good cause" is "an objective standard that asks whether a 'reasonable and prudent person' would consider the situation so grave that he or she had no reasonable alternative to quitting." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010).

The board suggested three alternatives as reasonable: (1) working as "diligently" as claimant could and letting the backlog accumulate; (2) requesting a leave of absence to seek mental or psychological help; or (3) continuing to work, while looking for employment elsewhere. The implied finding that claimant would be granted a leave of absence for psychological help lacks evidentiary support in the record. In fact, claimant testified that she could not request time off due to understaffing and the heavy workload. The employer presented no evidence at the hearing on employee assistance options or allowances for leave. Moreover, there was no evidence that any leave would remedy the work conditions upon claimant's return.

We therefore conclude that the second finding is not supported by substantial evidence. *See Hill v. Employment Dept.*, 238 Or App 330, 337, 243 P3d 78 (2010) (reversing and remanding a board order that disqualified the claimant from unemployment benefits where no substantial evidence supported the "reasonable alternatives" found by the board and those alternatives were, in fact, expressly contradicted by the claimant, the only party who offered evidence); *Peterson v. Employment Div.*, 39 Or App 49, 53, 591 P2d 384 (1979) (reversing and remanding a board order because no substantial evidence supported its finding that employer implemented proper safety practices where "[t]he only evidence on this factual issue is that of [the] petitioner and it is to the contrary").

Furthermore, the first and third findings do not explain the board's decision. They merely state that claimant could have continued to work. That conclusion is as true in this case as it is in any other case, and is beside the point. The findings do not determine the issue before the board— whether a reasonable person would have quit work because of the admittedly "onerous" conditions of employment and the effects of those employment conditions on claimant's health. As part of our review of an agency's findings for substantial evidence, we look at whether the findings provide "substantial reason" to support the legal conclusion reached by the agency. *Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) ("[A]gencies also are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." (Emphases in original.)). *See also City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981) (stating the test as "whether there is a basis in reason connecting the inference [of compliance with the decisional standard] to the facts from which it is derived"). Accordingly, the board's order does not provide substantial reasoning because it fails to explain how its conclusion follows from its first and third findings concerning claimant's alternatives to quitting.

Finally, the board misconstrued OAR 471-030-0038(4) in suggesting that a worker must seek other employment before quitting in order to show "good cause" under the

rule. Our cases have rejected that proposition. *See Hertel v. Employment Division*, 80 Or App 784, 788 n 5, 724 P2d 338, *rev den*, 302 Or 456 (1986) (concluding that the rule "does not require a worker to seek other employment before quitting in order to show good cause"); *Blivens v. Employment Division*, 55 Or App 665, 669, 639 P2d 690 (1982) (same).

Reversed and remanded for reconsideration.