Submitted May 10, reversed and remanded for reconsideration
September 21, 2011

Kathy D. CAMPBELL,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Willamette Education Service District,
*Respondents.*

Employment Appeals Board
10AB0902; A145533

263 P3d 1122

Larry L. Linder filed the brief for petitioner.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Willamette Education Service District.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

.

## ARMSTRONG, J.

Claimant seeks review of a decision by the Employment Appeals Board (EAB) that she was not entitled to unemployment benefits because she voluntarily left work without good cause. ORS 657.176(2)(c). She raises several assignments of error, all but one of which we reject without discussion. We write only to address claimant's eighth assignment of error in which she contends that EAB's determination that she did not have good cause to resign from her employment lacks substantial evidence and substantial reason. ORS 183.482(8)(c). Because we agree with claimant that the decision is not supported by substantial reason, we reverse and remand for reconsideration.

We summarize the facts from EAB's findings and the undisputed evidence in the record that is not inconsistent with those findings. Claimant was the director of fiscal services for the Willamette Educational Service District (WESD)[1] from July 1, 2007, until she resigned effective December 1, 2009. Claimant reported directly to WESD's superintendent; she was responsible for advising the superintendent on all fiscal matters, preparing budget documents, and overseeing the budget process. Her position also required her to authorize expenditures, and, as the EAB found, she "was responsible for their 'good judgment' and 'lawfulness,' as provided in the Oregon Accounting Manual (OAM) 10.40.00 PO." During her employment, claimant held a "certificate of school business management."

In October 2008, claimant began voicing concerns about financial improprieties and mismanagement at WESD. One of her concerns centered around the issuance of contracts that claimant contended were in violation of Internal Revenue Service rules and Oregon statutes. She was

---

[1] WESD is an educational school district that serves 21 school districts in Marion, Polk, and Yamhill counties, as well as other districts; it is governed by a nine-member board of directors. The legislature established educational school districts "to assist school districts and the Department of Education in achieving Oregon's educational goals by providing equitable, high quality, cost-effective and locally responsive educational services at a regional level." ORS 334.005(1). They are funded through a combination of state school funds, local revenues, state and federal grants, and contracts with local districts.

also concerned that school district funds were being improperly commingled with other funds and not properly reported to the board or in the annual audit. Claimant was disturbed that the superintendent had ordered an increase in the rate that school districts would be charged for WESD's services, even though the superintendent had been told that the increase was not needed because the amounts collected in the prior year had not yet been spent. The superintendent stated that a less than three percent increase would "look funny" and cause the districts to ask questions.

Claimant expressed her concerns to the superintendent on several occasions but was told that she did not understand how things work in an educational service district and was "angrily" rebuffed. Over the course of the next several months, she also reported her concerns to the deputy superintendent, WESD's auditors, the board chair, and, eventually, legal counsel for WESD. Claimant was assured by the board chair that her concerns would be addressed and that she need not worry about retaliation; she was also informed that he had initiated an investigation.[2]

On May 5, 2009, after claimant had met with school district representatives in April, claimant told the board chair that she "could not take it anymore, she was at the end of what she could take, and she felt like she was being forced to meet with the school districts and not tell them the truth." The chair asked her to "hang in there a little longer."

In late May 2009, claimant was preparing a presentation for the board on WESD's budget for the following year. Claimant told the deputy superintendant that "she was not comfortable reviewing the budget presentation with [the superintendent]" and "was being forced into sacrificing her values and morals." The day before the presentation, claimant was told that she could not present the parts of her presentation that would disclose the improper commingling and reporting of funds. Claimant met with WESD's legal counsel and told them that she was uncomfortable making the budget presentation without that information. She was told

---

[2] WESD also hired an audit firm to investigate certain allegations of financial impropriety. In October 2009, after the investigative and audit reports were issued, the board terminated its contract with WESD's superintendent.

to make the presentation as directed by the board chair. The deputy superintendent indicated to claimant that her concerns were being "swep[t] * * * under the rug." Claimant went out on medical leave that afternoon and did not make the presentation.

From June 2, 2009 to September 21, 2009, claimant was away from work on medical leave. On June 18, she filed notice of a tort claim against WESD pursuant to ORS 30.275. After claimant returned from leave, she discovered that she had been dropped from two e-mail management lists, causing her to miss important information and meetings; she was also told that, unlike other directors, she would need to notify the deputy superintendent of any planned absences, and some of her work duties were taken away.

On November 25, 2009, claimant and the deputy superintendent met with WESD's human resources director. During the meeting, claimant brought up several concerns about the misuse of funds. She also told the deputy that they were violating independent contractor rules and that "they should not be issuing a bad contract today if they know they are violating the rules." The deputy indicated that "they did not have to fix the contracting situation yet, the Secretary of State's office would give him 4-6 weeks."[3] Claimant said that it was "very difficult for her to do her job" and that she felt that "she was being retaliated against and intimidated."

Claimant resigned on December 1, 2009, as EAB described it, "because she believed her concerns were being ignored and that she would be 'forced to continue doing . . .

---

[3] At the time, the Secretary of State's office was conducting an independent review of WESD's financial practices at the request of the legislature, the Oregon Superintendent of Public Instruction, and WESD's board. Apparently, the deputy superintendent was aware that the audit report would find that the contracts were being improperly executed, but the report had not yet issued. That report issued in January 2010, after claimant had resigned.

The audit report summarized the audit's findings, in part, as follows:

"Our audit identified extensive and obvious weaknesses at WESD that would not persist in an organization that is responsibly governed, well managed, and open to concerns raised by staff. Documentation was missing or inadequate, funds were comingled, accounting transactions were overly complicated, appropriate controls were lacking, expenditures were questionable, services were not procured with proper contracts, management ignored or hid problems, and staff proposals for improvement were not finalized."

improper things' that put her school business manager certification at risk."

Claimant subsequently sought unemployment benefits and was denied. She requested and received a hearing before an administrative law judge (ALJ); the ALJ affirmed the denial of benefits on the basis that claimant "voluntarily quit work without good cause." Claimant sought review by EAB, and it agreed with the decision of the ALJ that claimant lacked good cause to leave work and, therefore, was disqualified from receiving benefits.

EAB reasoned that

"claimant did not assert or show that her stress was so great, or her authority so undermined, that she could not have continued to work for WESD until she could secure a position in a different organization. Nor did claimant show that continuing her employment with WESD, assuming, *arguendo*, its improper financial practices also continued, would put her 'license' at risk. We assume the 'license' to which claimant refers in her written argument is her certificate of school business management. Such a certificate is, as far as we are aware in the absence of any record evidence, a type of academic credential, representing 10 to 12 months of academic study. Claimant did not assert or show how such an academic credential would be jeopardized by the improper financial practices of her employer.

"Finally, claimant failed to show that continuing to work for WESD meant she would be 'forced to continue doing . . . improper things.' It is true that claimant was in a subordinate position; the board and the superintendent, not she, were responsible for WESD's governance and management, and she was expected to follow the instructions of her superiors. However, by claimant's own admission, no one from WESD told claimant she would be discharged or asked to resign if she refused to follow instructions. *Rather than leave work voluntarily, claimant had the option to continue working and, if asked to do anything improper, refuse. A reasonable and prudent person, exercising ordinary common sense, would have continued working for WESD to maintain a source of income while looking for a position in an organization that was responsibly governed, well managed, and open to concerns raised by staff.*"

(Footnote and record citations omitted; emphasis added.)

We review EAB's decision according to the standard provided in ORS 183.482(8)(c).[4] "That standard requires that the board's findings of fact be supported by substantial evidence and that its conclusions be supported by substantial reason, *i.e.*, its conclusions must reasonably follow from the facts found." *Simpson v. Board of Parole*, 237 Or App 661, 663, 241 P3d 347 (2010). We agree with claimant that EAB's order in this case does not comport with substantial reason.

An individual who "[v]oluntarily left work without good cause" is disqualified from receiving unemployment benefits. ORS 657.176(2)(c). Under OAR 471-030-0038(4), "[g]ood cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." Further, "the reason must be of such gravity that the individual has no reasonable alternative but to leave work." *Id.* As the Supreme Court recently explained, good cause is thus "an objective standard that asks whether a 'reasonable and prudent person' would consider the situation so grave that he or she had no reasonable alternative to quitting." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010).

In *McDowell*, the claimant, a teacher, resigned from his position after the school district's personnel director informed him that the district was recommending his discharge and he was advised by a union attorney that there was " 'absolutely no chance' " that the school board would overrule that recommendation and that he should therefore resign before he was discharged. In deciding whether the claimant left work with good cause, the court emphasized the objective nature of the standard to be applied:

"When, as here, an employee is facing a prospective discharge, whether resigning in lieu of that prospective discharge is for 'good cause' depends not on a hindsight determination of whether, in fact, claimant would have been

---

[4] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

discharged by the school board. The issue depends, instead, on whether a reasonable person facing that prospect of discharge would consider the prospect so grave a circumstance that resigning was the only reasonable option. That objective inquiry depends on what claimant in fact knew and reasonably should have known when he made his decision, not on an assessment of how events in fact would have played out."

348 Or at 619 (footnote omitted). Based on the facts found by the board, and the record supporting those facts—including the claimant's reasonable belief that the consequences of a discharge on his future employment prospects were serious, that the school board would follow the discharge recommendation of the personnel director, and that the claimant's ability to legally contest his discharge was narrowly circumscribed and not available predismissal—the court concluded that "a reasonable and prudent person, of normal sensitivity and exercising ordinary common sense[ would] believe that leaving work was the only reasonable course for him to take." *Id.* Under those circumstances, the claimant was entitled to a determination that he had good cause for resigning.

Here, EAB concluded that "claimant had the option to continue working and, if asked to do anything improper, refuse." However, as in *McDowell*, that conclusion does not follow from EAB's factual findings and the evidence in the record supporting those findings. EAB found, and the evidence in the record supports, that claimant attempted to do just what EAB suggests, but was unsuccessful. As EAB's factual findings reflect, claimant tried on more than one occasion to refrain from participating in the financial improprieties that were occurring at WESD—she told her superiors that "she felt like she was being forced to meet with the school districts and not tell them the truth," that she "was being forced into sacrificing her values and morals," and that she was uncomfortable making a budget presentation that did not disclose the improper commingling and reporting of funds. In a meeting with the deputy superintendent and the director of human resources immediately before she resigned, claimant repeated to the deputy superintendent that they were violating independent contractor rules but was told "they [were] going to do it."

The fact that, as EAB found, "no one from WESD told claimant she would be discharged or asked to resign if she refused to follow instructions" is not dispositive. EAB found that claimant was in a "subordinate position" and that "she was expected to follow the instructions of her superiors." In light of those circumstances, it was objectively reasonable for claimant to believe that continuing to refuse to perform her work as instructed would constitute insubordination, subjecting her to possible discharge for misconduct—a situation that EAB fails to confront. Thus, EAB's conclusion that claimant had a reasonable alternative to leaving work—namely, refusing to "do anything improper"—and, therefore, that claimant lacked good cause for quitting, does not reasonably follow from the facts found by EAB.[5] In sum, EAB's conclusion is not supported by substantial reason, and we reverse and remand on that basis.

Reversed and remanded for reconsideration.

---

[5] To the extent EAB's reasoning is also predicated on the theory that claimant was required to seek other work before resigning in order to establish "good cause" under the rule, that theory has been squarely rejected. *See, e.g., Warkentin v. Employment Dept.*, 245 Or App 128, 134-35, 261 P3d 72 (2011). Further, on remand, EAB can consider whether *McDowell*—which was decided after EAB issued its decision in this case—has any bearing on claimant's contention that her continued participation in improper conduct at WESD would have jeopardized her certification and affected her ability to find work as a certified school business manager.