Submitted February 7, affirmed May 15, 2013

Kathy D. CAMPBELL,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Willamette Education Service District,
*Respondents.*

Employment Appeals Board
11AB3431; A150346

303 P3d 957

Larry L. Linder and Law Office of Larry L. Linder, LLC, filed the brief for petitioner.

Denise G. Fjordbeck waived appearance for respondent Employment Department.

No appearance for respondent Willamette Education Service District.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Claimant seeks review of a final order on reconsideration of the Employment Appeals Board (EAB) that denied her unemployment insurance benefits on the ground that she had voluntarily resigned from her job without good cause. *See* ORS 657.176(2)(c) (individuals are disqualified from receiving benefits if they "[v]oluntarily left work without good cause"). The EAB's order on reconsideration reached the same conclusion as had its original order, which also denied claimant's request for benefits. As discussed in more detail below, we reversed and remanded that initial order for reconsideration because we determined that it was not supported by substantial reason. *Campbell v. Employment Dept.*, 245 Or App 573, 581, 263 P3d 1122 (2011) (*Campbell I*). Claimant contends that the EAB's order on reconsideration also is flawed; she argues both that the order is not supported by substantial evidence and reason and that the order is inconsistent with our holding in *Campbell I*.[1] We disagree and, for the reasons set forth below, we affirm.

We review the EAB's order "for substantial evidence and errors of law, and to determine whether [its] analysis comports with substantial reason." *SAIF v. Ramos*, 252 Or App 361, 363, 287 P3d 1220 (2012). Substantial evidence supports a factual finding "when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). An order comports with substantial reason when it "articulate[s] a rational connection between the facts of the case and the legal conclusion." *Endres v. DMV*, 255 Or App 226, 229, 297 P3d 505 (2013).

In its order on reconsideration, the EAB adopted those factual findings that it had made in its initial order, as summarized in *Campbell I*, and it also made additional findings. Our decision in this case turns on the EAB's findings about events immediately surrounding claimant's December 1, 2009, decision to leave her job. However, *Campbell I* provides helpful background information regarding events that

---

[1] Neither the Employment Department nor claimant's former employer filed a response brief in this court.

preceded claimant's resignation, and we quote from that opinion here:

> "Claimant was the director of fiscal services for the Willamette Educational Service District (WESD) from July 1, 2007, until she resigned effective December 1, 2009. Claimant reported directly to WESD's superintendent; she was responsible for advising the superintendent on all fiscal matters, preparing budget documents, and overseeing the budget process. Her position also required her to authorize expenditures, and, as the EAB found, she 'was responsible for their "good judgment" and "lawfulness," as provided in the Oregon Accounting Manual (OAM) 10.40.00 PO.' During her employment, claimant held a 'certificate of school business management.'
>
> "In October 2008, claimant began voicing concerns about financial improprieties and mismanagement at WESD. One of her concerns centered around the issuance of contracts that claimant contended were in violation of Internal Revenue Service rules and Oregon statutes. She was also concerned that school district funds were being improperly commingled with other funds and not properly reported to the board or in the annual audit. Claimant was disturbed that the superintendent had ordered an increase in the rate that school districts would be charged for WESD's services, even though the superintendent had been told that the increase was not needed because the amounts collected in the prior year had not yet been spent. The superintendent stated that a less than three percent increase would 'look funny' and cause the districts to ask questions."

245 Or App at 575-76 (footnote omitted).

Claimant continued to raise concerns over the next several months, not only with her supervisor, but also with WESD's auditors, board chair, and legal counsel. *Id.* at 576. Claimant was away from work on medical leave from early June through late September 2009. During that period, she was dropped from two management e-mail lists and some of her work duties were removed. *Id.* at 577. After claimant returned to work, she and the deputy superintendent met with WESD's human resources director in late November 2009. In *Campbell I*, we described the events culminating in claimant's ultimate resignation:

"During the meeting, claimant brought up several concerns about the misuse of funds. She also told the deputy that they were violating independent contractor rules and that 'they should not be issuing a bad contract today if they know they are violating the rules.' The deputy indicated that 'they did not have to fix the contracting situation yet, the Secretary of State's office would give him 4-6 weeks.'[2] Claimant said that it was 'very difficult for her to do her job' and that she felt that 'she was being retaliated against and intimidated.'

"Claimant resigned on December 1, 2009, as EAB described it, 'because she believed her concerns were being ignored and that she would be "forced to continue doing * * * improper things" that put her school business manager certification at risk.'"

*Id.* at 577-78 (footnote omitted).

Claimant subsequently sought unemployment insurance benefits, which the Employment Department denied. She then asked for and received a hearing before an administrative law judge (ALJ), who agreed with the department and issued a decision stating that claimant had resigned without "good cause" to do so and therefore was ineligible for unemployment benefits. In March 2010, claimant sought review by the EAB, which affirmed the ALJ's decision.

The EAB's original order—like the one currently on review—was based on the interplay between ORS 657.176(2)(c) and OAR 471-030-0038(4). Under ORS 657.176(2)(c), an individual who leaves work "without good cause" is disqualified from receiving unemployment insurance benefits. The administrative rule, OAR 471-030-0038(4), clarifies that "good cause" to resign exists where "a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work" and the reason for resigning is "of such gravity that the individual *has no reasonable alternative* but to leave work." (Emphasis added.)

---

[2] At that time, the Secretary of State's office was reviewing WESD's financial practices. In 2010—after claimant had resigned—the office produced a report that "'identified extensive and obvious weaknesses at WESD that would not persist in an organization that is responsibly governed, well managed, and open to concerns raised by staff.'" *Campbell I*, 245 Or App at 577 n 3 (quoting audit report).

The claimant "has the burden of proving good cause by a preponderance of the evidence." *Kercher v. Employment Dept.*, 250 Or App 409, 411, 280 P3d 1040 (2012). In this case, therefore, the EAB's evaluation of claimant's request for unemployment benefits turned on whether she proved that she had no reasonable alternative to leaving WESD on December 1, 2009.

In its 2010 order, the EAB observed that claimant's working conditions "were not ideal[,]" and it quoted from the Secretary of State's audit report, which described financial problems at WESD. Nonetheless, the EAB decided that claimant had left work without good cause because, although claimant had held a subordinate position and had been expected to accept direction from her superiors, "no one from WESD told claimant she would be discharged or asked to resign" if she did not follow instructions. The crux of the EAB's reasoning was that even "assuming, *arguendo*, [that WESD's] improper financial practices * * * continued" in late 2009, claimant "had the option to continue working and, *if asked* to do anything improper, refuse." (Emphasis added.)

On review, we held that the EAB's decision did not follow from its factual findings because those findings did not support a conclusion that, if asked to continue facilitating financial improprieties, claimant reasonably could have refused. *Campbell I*, 245 Or App at 581. That is, we rejected the EAB's reasoning that, *even if* claimant were asked to commit improprieties, her purported ability to refuse to follow her superiors' instructions constituted a reasonable alternative to leaving work.

On remand for reconsideration, the EAB affirmed the ALJ's order for a second time, again deciding that claimant had voluntarily left work without good cause and was, therefore, ineligible for unemployment benefits. However, the EAB's second analysis did not hinge—as had the analysis in its first order—on whether claimant had the option of refusing to facilitate any fiscal mismanagement. Instead, the order on reconsideration focused on a factual question that we did not address in *Campbell I*: whether claimant actually would have been expected to commit "improper" acts after December 1, 2009 (the day she resigned).

On that point, the EAB made findings that undercut claimant's assertion that she had no reasonable alternative to leaving work. Most directly, the EAB found that, "*if* anyone at WESD was 'doing * * * improper things' by December 1, 2009, it was not claimant." (Emphasis added.) That finding was echoed in the EAB's determination that claimant had not proved that she would have been required to perform any improper tasks after December 1. The EAB acknowledged claimant's testimony that "'the illegal piece' that was 'probably still going on,' 'was the hiring of people on contracts'" that were being prepared and approved "in a manner inconsistent with 'IRS rules and policies.'" However, the board noted, claimant did not refute testimony given by the WESD's new human resources director, who stated that, as of November 1, 2009, the contracting practices that previously might have alarmed the IRS were "not continuing." Moreover, the board explained that, although there was evidence that claimant had been asked to participate in improper practices during April and May 2009,

> "[b]y November 2009, public scrutiny of the improprieties that concerned claimant was elevated, audits and investigations were well underway, necessary reforms were being planned and implemented, with claimant even being asked to 'take a lead' in their execution."

The EAB thus determined that, "[a]t most, claimant's evidence establishes that, at the time she resigned, all needed reforms were not completed, and she disagreed strongly with management about the timing and pace of those reforms." The board then decided that claimant's disagreement with the pace of change did not result in her having "no alternative but to leave work," judged by an objective standard. "Put another way," the board explained,

> "a reasonable and prudent Director of Financial Services, of normal sensitivity, exercising ordinary common sense in claimant's circumstances, would have continued her employment past December 1, 2009, at least until she found employment elsewhere that was more to her liking.[3] Accordingly,

---

[3] We are troubled by the EAB's continued reference to the fact that claimant did not obtain other employment before she resigned from WESD. As we have noted repeatedly—including in our opinion in *Campbell I*—an employee is not "required to seek other work before resigning in order to establish 'good cause'

claimant did not have 'good cause' to quit work when she did, and is disqualified from receiving unemployment insurance benefits * * *."

Claimant's petition for judicial review challenges that determination.

Stated broadly, claimant makes two arguments on review: (1) that the EAB's determination that she did not have good cause for leaving work lacks substantial evidence and reason; and (2) that the EAB's decision is impermissibly inconsistent with *Campbell I.* We disagree with both of those contentions.

We start with claimant's second argument, in which she asserts that *Campbell I* held that, "based upon the facts in the record, [claimant] established 'good cause' to resign." According to claimant, *Campbell I* "established the law of this case" on that point, and the EAB committed legal error when it "fail[ed] to follow that decision."

As an initial matter, we disagree with claimant's characterization of *Campbell I.* As explained above, in that case we held that the EAB's decision that claimant could simply refuse to undertake any improper tasks that she was asked to perform did not follow from its factual findings that she was in a "subordinate position" and therefore was "expected" to follow instructions. 245 Or App at 581. As a result, we decided that the EAB's decision lacked substantial reason. *Id.* But our determination that the EAB's reasoning did not support its conclusion that claimant lacked "good cause" for resigning is not logically equivalent to an affirmative holding that claimant *did* establish "good cause" for leaving her job. We held only the former in *Campbell I,* not the latter.

under the rule[.]" 245 Or App at 581 n 5. To the contrary, the theory that a job search is a prerequisite to establishing "good cause" for resigning has been "squarely rejected." *Id.* Notwithstanding the EAB's reference to claimant having not "found employment elsewhere," reading the order on reconsideration as a whole, we conclude that the EAB did not base its "no good cause" determination on any absence of a job search but rather (as we discuss later in this opinion) on its finding that claimant no longer was being required to engage in improprieties by the time she resigned.

We also disagree with claimant's assertion that, on reconsideration, the EAB "fail[ed] to rely on any additional facts for its holding" and merely reiterated the conclusion that we rejected in *Campbell I*. First, although the EAB's order on reconsideration did adopt the factual findings from its initial order, the EAB also emphasized additional findings, including that claimant did not prove that she was doing any "improper things" by December 1, 2009, or that she would be required to do any improper things after that date. Those findings are supported by the testimony of WESD's director of human resources, who indicated that claimant would not have been asked to do anything improper after the beginning of November 2009. Thus, claimant's analysis fails to the extent that it is premised on a contention that the order on reconsideration is based on the same factual findings as was the original order.

Moreover, the order on reconsideration is based on a different analysis than the one we rejected when the original order was before us on judicial review. In *Campell I*, we focused on the EAB's flawed *reasoning, viz.*, its determination that claimant reasonably could have refused to obey any directions to commit financial improprieties. Notably, neither our opinion in *Campbell I* nor the EAB's original order rested on any decision about whether, in fact, claimant would have been asked to continue performing improper acts after December 1, 2009. To the contrary, both decisions assumed, *arguendo*, that WESD would have made such requests; the dispute was only over what consequences followed from that *assumed* fact. *See, e.g., Campbell I*, 245 Or App at 580-81 (rejecting the EAB's conclusion that "claimant had the option to continue working and, *if* asked to do anything improper, refuse" (emphasis added)). In its order on reconsideration, the EAB addressed the underlying factual question, and it explicitly found that claimant would *not* have been required to commit any improprieties after December 1. Because the board's decision rests on facts and reasoning that we did not address (and had no reason to address) in *Campbell I*, no "law of the case" principle barred the board from analyzing claimant's situation the way it did on reconsideration.

The remaining question is whether the EAB's order on reconsideration is supported by substantial evidence and comports with substantial reason. In that regard, claimant's primary contention is that the EAB "failed to consider evidence of continued misconduct[.]" But the order on reconsideration shows that the board did consider such evidence, including claimant's own testimony. It apparently chose, however, to give more weight to different evidence in the record, including the testimony of WESD's human resources director, who stated that the contracting practices to which claimant had particularly objected had ceased by November 2009. The EAB also relied on evidence that major changes were underway at that point, and that claimant had been asked to take a lead in the execution of necessary reforms. That evidence adequately supports the EAB's determination that claimant was not being asked to do anything improper by the time she resigned.

Claimant also asserts that the EAB "disregarded the evidence that [claimant] was suffering retaliation and that she had exhausted her avenues of complaining about [WESD's] misconduct." We find no indication in the order on reconsideration that the EAB disregarded the evidence to which claimant points, *i.e.*, her removal from management e-mail lists, changes to some of her job duties, and changes to certain modes of communication among claimant and her managers. To the contrary, the EAB noted those circumstances in the findings included in its initial order, which it adopted in the order on reconsideration. The EAB simply determined that those circumstances did not create a situation in which "a reasonable and prudent Director of Financial Services, of normal sensitivity, exercising ordinary common sense in claimant's circumstances" would have "no alternative but to leave work." Claimant has not identified any flaw either in that ultimate determination or in the analysis leading to it.

In the end, claimant asks us to substitute our judgment for the EAB's on the determinative factual question of whether claimant "would be 'forced to continue doing *** improper things.'" But our role is not to determine whether we would have reached the same result as the EAB

if we were acting as fact finders. Rather, our review of an administrative agency's decision is limited to determining whether substantial evidence and reason support the agency's determination and whether the agency applied the law correctly. *See Kercher*, 250 Or App at 412 ("[o]ur role is not to substitute our judgment for that of the [EAB]" on the question of whether a claimant left work without good cause, "but rather to determine if the findings of fact are supported by substantial evidence"). Applying that standard of review, we find no basis for disturbing the EAB's order on reconsideration.

Affirmed.