Argued and submitted May 15, reversed and remanded December 10, 2014

Ann T. KROETCH,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Wells Fargo,
*Respondents.*

Employment Appeals Board
12AB2638; A152821

341 P3d 137

David C. Sorek argued the cause and filed the brief for petitioner.

Clarence M. Belnavis, Erin O. Sweeney, and Fisher & Phillips LLP appeared for respondent Wells Fargo.

Denise G. Fjordbeck waived appearance for respondent Employment Department.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Schuman, Senior Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Claimant seeks judicial review after the Employment Appeals Board (EAB) denied her unemployment benefits. The Employment Department (department) initially allowed benefits. Employer Wells Fargo requested a hearing on that allowance, but its request was untimely, and an administrative law judge (ALJ) concluded that employer lacked good cause for its tardiness. EAB reversed the ALJ, concluding that employer had good cause for filing a late hearing request. Claimant contends that EAB did not adequately explain why it disagreed with an explicit credibility determination that was central to the ALJ's conclusion that there was not good cause for employer's untimely request. We agree with claimant and, therefore, reverse and remand.

Except as noted below, we summarize the facts from the board's findings and the undisputed evidence in the record that is not inconsistent with those findings. *Campbell v. Employment Dept.*, 245 Or App 573, 575, 263 P3d 1122 (2011). Employer terminated claimant's employment, and she sought unemployment benefits. On October 18, 2011, the department determined that employer had discharged claimant, but not for misconduct, and, accordingly, allowed claimant unemployment benefits. That decision included the following information:

"IF YOU DO NOT AGREE WITH THIS DECISION SEE THE ENCLOSED INFORMATION FOR YOUR APPEAL RIGHTS.

"Date Mailed: October 18, 2011. Any appeal from this decision must be filed on or before November 07, 2011 to be timely.

"IMPORTANT INFORMATION

"If you disagree with the enclosed Administrative Decision, PLEASE USE THE FORM BELOW TO REQUEST A HEARING.

"* * * * *

"• Mail or fax this form to the Office of Administrative Hearings by the date stated on the administrative decision."

(Capitalization and underscoring in original.) Employer's representative, Barnett Associates, received the decision on October 21, 2011. Barnett filed a "request for relief of charges" (Form 197) with the department on November 1, 2011.[1] However, Barnett did not request a hearing to contest the unemployment compensation determination by the department until November 17, 2011, 10 days after the deadline.

On January 6, 2012, ALJ Janzen held a hearing, in part to consider whether employer had good cause for filing a late hearing request. Employer argued that there was good cause for its late hearing request because Barnett staff had received incorrect advice from the department about when such a request could be filed. In support of that argument, employer offered the testimony of Danielle Sfera, an employee of Barnett. Because of the importance of Sfera's testimony to this case, we set it out in detail.

Sfera first responded to questions from ALJ Janzen:

"Q   Okay, who would have been responsible for reading [the October 18, 2011, administrative decision allowing benefits]?

"A   That would be me.

"Q   And * * * is there some kind of procedure, or who makes the decision on whether to appeal something or not?

"A   We give our recommendation to Wells Fargo, but ultimately, the decision is up to them.

"Q   What happened after you received this particular decision? What was the interaction between Barnett Associates and Wells Fargo?

"A   Well, at the time that this one was received, there was no interaction, as we hadn't received the claim, the request for separation, from the state. We still haven't received that

---

[1] ORS 657.471 provides standards and a process for an employer to request relief from the charges that result from a determination that a claimant is eligible for unemployment compensation benefits under ORS 657.267. In *Johnson v. Employment Div.*, 124 Or App 77, 861 P2d 1032 (1993), we determined that the process for obtaining relief from charges under ORS 657.471 was independent of, and not a substitute for, the process to contest unemployment compensation eligibility determinations under ORS 657.266(5).

claim here at Barnett, as those claims do go to the location, they don't come here.

"Q    Why did you need the request for separation to *** contact the client in this case?

"A    Well, without answering that claim, we don't have rights to protest that determination.

"Q    What do you mean by that, what are you talking about with the request for separation, what is that?

"A    The actual claim from the state.

"Q    Okay *** explain this a little bit more to me. Can you sort of describe the procedure or policy that goes on after you receive an administrative decision?

"A    Sure. Well, first we receive the initial claim for unemployment, in which case we would reach out to Wells Fargo to get the separation information to see why the claimant no longer works for the company. After that information is submitted to the state, then they would get the administrative decision, which allows or denies the claimant unemployment. When we received this administrative decision, we had no rights to protest because we never answered that initial claim.

"Q    Who answered the initial claim?

"A    That initial claim usually goes to the location, it usually goes to the branch, as we cannot file powers of attorney in Oregon, it's a work site state, so those claims go directly to the employer, they wouldn't come to Barnett.

"Q    Okay, so when you received this particular administrative decision, * * * what was done with it?

"A    That was scanned into [claimant's] file.

"Q    And was anything else done with it?

"A    We waited until we received the relief of charges, and that's when the state informed me that that's when we could appeal, at that point.

"Q    You could have—Barnett could have—what do you mean, you could appeal, what does that mean?

"A    We could appeal the relief of charges, because that's the only form that we received here at Barnett.

"Q   And what about the administrative decision that's at issue here today?

"A   We did not appeal that one.

"Q   *** Can you explain to me why *** Barnett Associates did not appeal the administrative decision on behalf of Wells Fargo until what appears to be November 17th, 2011?

"A   When we received the administrative decision, a call was made to the state to see if we lost our rights to appeal that decision. They informed us that because the initial claim was never answered, we could not appeal this decision, we would have to wait until we received the relief of charges decision, which we received the relief of charges form here, so we answered that timely. And then as soon as we received the relief of charges decision, which informed us that *** the state could not relieve our account of *** charges, we then went ahead and appealed that decision.

"Q   When *** Barnett Associates received the administrative decision here, is there any reason why it didn't just contact Wells Fargo to let it know that it had received this decision?

"A   No[t] that I'm aware of."

Claimant's lawyer then asked Sfera why Barnett did not seek a hearing on the October 18, 2011, administrative decision allowing benefits, and Sfera responded:

"Well, because when we received the administrative decision, we only had the relief of charges form. We didn't get the actual termination. I forget what form it is, but Oregon has two separate claim forms—one is a relief of charges and one is the actual unemployment claim. When we received this, all we had in our office was the relief of charges. So when a call was made to the state, they told us that we needed to wait to appeal the relief of charges decision, we could not appeal this administrative decision, because we never answered that initial claim.

"Q   You were told by a representative of the state that you could not appeal this decision until you received a separate form?

"A   Yes."

The ALJ then asked some follow-up questions:

"Q [W]ho made the call to the state about * * * appealing this?

"A That I'm not 100 percent sure of.

"Q Do you have notes on—in your file about this at all?

"A No.

"Q Do you know when that call was made to the state?

"A I don't want to say for sure, but it would probably be the 21st or the 22nd, right after we received that administrative decision.

"Q And were any notes made about who said—or which representative said that Barnett Associates couldn't appeal until this other information was received?

"A Not by me, no."

Claimant's lawyer then asked additional questions:

"Q How are you so sure * * * that you were advised affirmatively that you could not appeal this decision * * * but yet you do not know who would have called the State of Oregon and been told this, or when they would have called * * * what evidence do you have that this was what was said?

"A No, I didn't make that call. That's just what I was told after the call was made.

"Q Who * * * told you this?

"A Somebody at Barnett.

"Q But you don't want to disclose who?

"A I don't know if I can. I don't know.

"ALJ JANZEN: Well, I'll chime in here. I can only go off of information that's provided in this hearing. * * * [W]itnesses who are at least named assist me in making decisions on how much weight to give hearsay evidence.

"[WELLS FARGO REPRESENTATIVE]: I would advise, Ms. Sfera, if you know the name, you're more than free to provide it, if you have that with you.

"* * * * *

"ALJ JANZEN:   Okay. Ms. Sfera, do you know the name of the individual who gave you that information?

"MS. SFERA:   I can't recall who told me."

To summarize, employer's position—supported primarily if not exclusively by Sfera's testimony—was that, when Barnett received the October 18, 2011, administrative decision allowing benefits, it had not received claimant's claim for unemployment benefits and, accordingly, had not answered that claim. Employer further asserted that Barnett believed that, without answering the claim, it had no right to seek a hearing on the decision allowing benefits; instead, it had to wait for the "relief of charges decision," at which point it could appeal. Sfera explained that that belief was based on a phone call that her coworker—whose name she could not recall—made to an unspecified state office. That phone call was not documented in Barnett's files. Because Barnett misunderstood employer's rights, based on advice from the department, employer asserted that it had good cause for not filing a timely hearing request on the October 18, 2011, administrative decision allowing benefits.

The ALJ dismissed employer's hearing request. The ALJ found that the October 18, 2011, administrative decision allowing benefits was based, in part, on a request for separation information (Form 220) supplied by Barnett on October 11, 2011.[2] The ALJ also found that Sfera's testimony was not credible:

"Sfera did not know who had the conversation with [the department], who the [department] representative was who provided the information, or when the phone call was made. * * * Sfera's hearsay testimony is not credible. I have found facts accordingly."

The ALJ accordingly concluded that evidence that employer believed, based on information provided from the department, that it could not challenge the administrative decision allowing benefits until it filed its request for relief from

_____

[2] This form was included in employer's exhibit 3. The form indicates that it was completed by Debbie Durand of Barnett and faxed to the department on October 11, 2011.

charges did not meet employer's burden to prove that it had good cause to file a late hearing request.[3]

Employer appealed to EAB, which reversed the ALJ's order. EAB found:

> "Prior to [the hearing before ALJ Janzen], Barnett staff mistakenly believed that [employer] had not filed a response to the Department's request for separation information (Form 220), and consequently, that the employer had forfeited any right to request a hearing on [the October 18, 2011, administrative decision allowing benefits]. After Barnett received notice of [the October 18, 2011, administrative decision allowing benefits], its staff contacted the Department to confirm their understanding that employer had no hearing rights. From that contact, Barnett staff understood or misunderstood that the employer 'could not appeal,' and to wait for the Form 197 [notice of potential charges], which they did. *** As a consequence of Barnett's staff's contacts with the Department, and consequent confusion over the Department's appeal processes, Barnett mistakenly failed to file a request for hearing *** until ten days after the filing deadline had expired."

EAB concluded that employer had met its burden to establish good cause for filing a late hearing request, reasoning as follows:

> "The Department's processes are varied and complex, some would say unnecessarily so. The hearing record contains abundant evidence that Barnett staff were confused by the Department's acronyms for, and arcane distinctions between, types of decisions and the procedures that must be used to perfect each type of appeal. And, although the Department's witnesses and the ALJ each seemed to understand the processes with which they were familiar, there were other, 'related' processes that they very clearly did not understand, and so were unable to clarify at the hearing as one might have expected them to do. It is, therefore, entirely plausible that Barnett staff were misinformed in their dealings with the Department as to whether, when,

---

[3] Employer initially appealed ALJ Janzen's decision to EAB, which remanded for supplementation of the evidentiary record. ALJ Davis determined that employer's proffered exhibit 3 had been discussed during the hearing before ALJ Janzen and admitted that exhibit. On consideration of the entire record, including exhibit 3, ALJ Davis readopted ALJ Janzen's order.

and how they might request a hearing on [the October 18, 2011, administrative decision allowing benefits]."

EAB relied on its own decision in *Robert J. Moreau* (EAB Decision 11-AB-2800 (Oct 5, 2011)) and our decision in *Meritage at Little Creek v. Employment Dept.*, 232 Or App 554, 222 P3d 736 (2009), cases in which reliance on or confusion resulting from misleading advice from the department had constituted good cause for a late hearing request.[4] EAB concluded that (1) "to the extent the employer filed a late request for hearing as the result of the Department's faulty, misleading or misunderstood advice, good cause has been shown" under *Meritage at Little Creek* and (2) to the extent that employer filed a late hearing request as the result of a mistake, the mistake was excusable under OAR 471-040-0010.

Generally, a party may appeal an adverse department decision within 20 days. ORS 657.269. However, for good cause, the period may be extended for a time that is reasonable under the circumstances of each case. ORS 657.875. "'Good cause' exists when an action, delay, or failure to act arises from excusable mistake or from factors beyond an applicant's reasonable control." OAR 471-040-0010(1). Here, EAB determined that employer submitted a late hearing request as the result of misleading advice and excusable mistake. We review the evidentiary support for the board's factual findings that are pertinent to its good cause determination for substantial evidence, ORS 183.482(8)(c), and review the legal sufficiency of the resulting good cause determination for substantial reason and legal error, ORS 183.482(8)(a). "Substantial reason" is "some kind of an explanation connecting the facts of the case (which could include the facts found, if any) and the result reached." *Martin v. Board of Parole*, 327 Or 147, 157, 957 P2d 1210 (1998).

Claimant contends that EAB relied solely on Sfera's testimony to reach its findings. According to claimant, in doing so, EAB disregarded ALJ Janzen's express determination that Sfera was not credible, without explaining why it

---

[4] Both *Meritage at Little Creek* and *Moreau* were decided under a previous and different definition of "good cause" in OAR 471-040-0010.

came to a different credibility determination than the ALJ. As there was no other evidence to support EAB's findings, claimant asks us to reverse EAB's order for lack of substantial evidence. Because the department has waived appearance on judicial review, it offers no counterargument.

ORS 657.275 governs EAB review of ALJ orders. In pertinent part, it provides:

> "When there is evidence in the record both to make more probable and less probable the existence of any basic fact or inference, the board need not explain its decision to believe or rely on such evidence *unless the administrative law judge has made an explicit credibility determination regarding the source of such facts or evidence.*"

ORS 657.275(2) (emphasis added). Accordingly, when an ALJ has made an express credibility finding regarding the source of evidence, EAB must explain its decision to nonetheless rely on that evidence.[5]

In this case, the ALJ made an explicit credibility determination regarding the source of evidence—Sfera's testimony—that Barnett staff mistakenly believed that employer had not filed a response to the department's request for separation information, that Barnett had contacted the department and received misleading information about when it could file its hearing request, and that Barnett was, for those reasons, reasonably mistaken about the process to follow to file such a request. EAB did not explain why it relied on Sfera's testimony after the ALJ had expressly found her not to be credible. Where, as here, the particular evidence is the lynchpin—and perhaps the sole source of support—of a party's position, an explanation is even more crucial. Without it, we cannot tell whether EAB's decision to

---

[5] ORS 657.275(2), including the quoted sentence, was enacted in 1991. Or Laws 1991, ch 328, § 1. We had regularly applied a similar principle in case law prior to 1991. *See, e.g., Whitney v. Employment Division*, 84 Or App 206, 210, 733 P2d 493 (1987) (remanding for reconsideration where EAB had rejected referee's determination of credibility; noting that, in those circumstances, "EAB must explain its credibility finding by specifically describing why it disagrees with that determination" or the court will not be able to tell whether EAB's decision is supported by substantial evidence); *Hill v. Employment Division*, 73 Or App 422, 424-25, 698 P2d 1010 (1985) (remanding for reconsideration where credibility of witnesses was pivotal but EAB had failed to explain adequately its reversal of a referee's explicit credibility determination).

reverse—based upon its acceptance of Sfera's testimony—is supported by substantial reason. And without Sfera's testimony, the board's factual findings on Barnett's mistaken belief and the department's misleading information are not supported by substantial evidence. Accordingly, we reverse and remand the case to EAB for further consideration.[6]

Reversed and remanded.

---

[6] Claimant also takes issue with another part of EAB's order. Before concluding that employer had good cause for its late hearing request, EAB rejected employer's argument that its November 1, 2011, request for relief from charges (Form 197) could be construed as a timely request for hearing on the October 18, 2011, administrative decision allowing benefits. EAB rejected that argument because the Form 197 had been submitted to the incorrect section of the department. However, before reaching that conclusion, claimant complains, EAB "indulged in a fallacious and erroneous legal analysis which concluded that requesting relief from charges on Form 197 could be considered a request for a hearing or an appeal of [the October 18, 2011, administrative decision allowing benefits]." However, this contention is beside the point, since EAB concluded that the Form 197 was not properly submitted to be considered a hearing request on the October 18, 2011, administrative decision allowing benefits in any event.