Submitted December 3, 2015, affirmed April 12, 2017

Toris L. HENLEY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Sonic Drive In,
*Respondents.*

Employment Appeals Board
2014EAB1215; A157790

395 P3d 55

Michael W. Franell filed the brief for petitioner.

Denise G. Fjordbeck waived appearance for respondent Employment Department.

No appearance for respondent Sonic Drive In.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge, pro tempore.

## FLYNN, J., pro tempore

Claimant seeks judicial review of a final order of the Employment Appeals Board (board), which concluded that he was not entitled to unemployment benefits because he voluntarily left work without good cause. *See* ORS 657.176(2)(c). We conclude that the board's decision is supported by substantial evidence and, therefore, affirm.

We take the facts from the board's findings and from the undisputed evidence in the record that is not inconsistent with those findings. *See Warkentin v. Employment Dept.*, 245 Or App 128, 130, 261 P3d 72 (2011). Claimant had worked for employer for about three years when he hired a lawyer to assert a claim for racial discrimination based on racially disparaging comments and actions of a general manager who was claimant's supervisor. In response, employer fired that general manager.

Shortly thereafter, employer hired a new general manager who was a friend of the prior manager and who immediately started making racially discriminatory and disparaging comments towards claimant. Claimant reported this conduct to employer's franchise manager, who had been responsible for firing the previous general manager. The franchise manager came to claimant's workplace, apologized to claimant for the behavior of the new general manager, and reprimanded—but did not fire—that general manager.

Within a month of that reprimand, the new general manager approached claimant at work, said that he wanted to kill himself and asked claimant to get him a gun because, "if he had the gun, he would put a bullet in his own brain." Another manager overheard this request. Claimant never returned to work after that day. Two days later, claimant called the police and told them "that [his] boss asked [him] for a gun and was talking about he wanted to kill hi[m]self." As evidence at the hearing, claimant submitted the police report that was generated as a result of the call. The report describes the type as "suicidal subject." However, claimant did not report the incident to the franchise manager or to any other representative of employer. Claimant applied for and was denied unemployment benefits.

After a hearing, at which claimant provided the only testimony, an administrative law judge (ALJ) affirmed the Employment Department's denial of benefits on the basis that claimant "voluntarily left work without good cause." Claimant appealed to the board. The board also found that claimant "voluntarily left work without good cause."

An employee is disqualified from receiving unemployment benefits if the employee has "[v]oluntarily left work without good cause[.]" ORS 657.176(2)(c). As clarified by administrative rule, "[i]f the employee could have continued to work for the same employer for an additional period of time the separation is a voluntarily leaving of work." OAR 471-030-0038(2)(a). When the employee seeks benefits after a voluntarily leaving of work, the employee bears the burden to prove, by a preponderance of the evidence, that he or she had good cause to leave. *Kercher v. Employment Dept.*, 250 Or App 409, 411, 280 P3d 1040 (2012).

In general, "[g]ood cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." OAR 471-030-0038(4). The reason for leaving must "be of such gravity that the individual has no reasonable alternative but to leave work." *Id.* However, the determination of whether good cause exists must be based on the facts of a particular case. *Kercher*, 250 Or App at 411.

In addressing whether claimant "left work without good cause," the board considered two reasons that claimant gave to explain why he left work when he did: (1) the racially disparaging and discriminatory treatment to which both the old and the new general managers had subjected claimant; and (2) claimant's concerns for his safety after the new general manager asked claimant to get him a gun.

As to claimant's contention that he quit work because of the racially disparaging and discriminatory comments, the board observed that claimant had not contended that the treatment continued after the date on which the franchise manager "took active and firm steps" to stop the comments by the current general manager. Thus, the board concluded, claimant did not establish that—at the time that

claimant quit work—the racial harassment was "a grave reason for claimant to leave work" because it had already been corrected by employer.

As to claimant's contention that he left work because the gun comment made claimant fear for his personal safety, the board concluded that, "[o]n the facts in this record, a reasonable and prudent employee who wanted to remain employed, exercising ordinary common sense," would not have quit before consulting with the police or representatives of the employer, to determine whether any safety "concerns were well founded and, if so, whether the employer or the police were going to take reasonable steps to ensure his safety in the workplace." The facts that the board cited as supporting its conclusion include that the general manager's expressed desire to have a gun to "put a bullet in his own brain" was not a threat of harm to claimant and that claimant's failure to immediately contact the police or to report concerns to his employer—given that employer had "promptly and forcefully responded" to earlier concerns— suggested that claimant "was not genuinely fearful."

On review to this court, claimant challenges only the board's determination that his safety concerns did not provide good cause to leave work without first exploring other options.[1] As indicated above, the board based that determination on its ultimate finding that claimant "was not genuinely fearful" when he left work. Claimant contends that the record does not support that finding. We disagree.

A board order must be "supported by substantial evidence in the record." ORS 183.482(8)(c). Substantial evidence exists to support the board's factual findings when "the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* Reviewing the present record in light of that standard, we conclude that substantial evidence supports the board's findings. First, the board correctly recognized that the general manager's words, as claimant described them, do not inherently convey an

---

[1] Claimant does not dispute the board's finding that the new general manager's racially disparaging treatment was not ongoing when claimant left work. Nor does claimant suggest that he understood the final comment from the new general manager about wanting a gun to be intended as harassment.

explicit threat of physical harm to claimant. Even if context could have suggested something different, claimant does not challenge the board's findings that he waited two days before reporting his safety concerns to the police and that he failed to report the incident to the franchise manager or other representative of employer, despite the fact that "they had promptly and forcefully responded" to claimant's earlier complaints.[2] As the board reasoned, that evidence permits an inference that claimant was not, in fact, "genuinely fearful" for his safety.

Although claimant argues that his delay can be explained by the fact that he had no need to be fearful once he had removed himself from the workplace, the board was not required to make that finding. Moreover, the test for good cause includes whether the "individual has no reasonable alternative but to leave work." *Kercher*, 250 Or App at 411 (internal quotation marks omitted). Thus, even if claimant were legitimately fearful of being at work with the general manager, the question is whether a reasonable alternative to quitting would have been for claimant to first explore whether employer or the police could adequately address any safety threat. Given the evidence that employer had "promptly and forcefully responded" to earlier concerns that claimant raised, including by firing the first general manager who made racist remarks, substantial evidence supports the board's finding that claimant had a reasonable alternative to quitting work when he did, even if he genuinely feared for his safety. Thus, substantial evidence supports the board's determination that claimant failed to establish that he had good cause to quit work.

Affirmed.

---

[2] Although claimant challenges the board's finding that claimant raised no safety concern to the manager who overheard the comment, we understand the board's inference that claimant was not "genuinely fearful" for his safety to be primarily based on the lack of a report to the representatives of employer who had addressed claimant's previous concerns. Moreover, we disagree with claimant's premise that the finding is unsupported because nothing in the record indicates that claimant "did not express concern about the request" to the other manager. Claimant, who bore the burden of proof, described his conversation with that other manager and made no mention of having raised a safety concern. Under those circumstances, the board could reasonably draw the negative inference that claimant did not raise a safety concern to that other manager.