Submitted on record and briefs September 6, reversed and remanded for reconsideration October 16, 1996

James R. WESTROPE,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and North Sky Communications,
*Respondents.*

(95-AB-1943; CA A90853)

925 P2d 587

Judicial Review from Employment Appeals Board.

William D. Stark submitted the brief for petitioner.

No appearance for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Claimant seeks judicial review of an order of the Employment Appeals Board. The Board denied claimant unemployment benefits on the ground that he voluntarily left work without good cause. ORS 657.176(2)(c).[1] We reverse.

Claimant's employer (North Sky Communications) hired claimant to manage the rebuilding of a cable television facility for a cable company, a two-year project. Employer expected claimant to work around 40 hours per week and claimant carried a pager during work hours. If the cable company had an emergency after work hours, it could contact claimant and employer's other employees through an answering service or it could call claimant at his home. About seven months into the project, employer issued a memorandum to claimant. It said in pertinent part:

"AFTER HOUR EMERGENCIES: [Claimant], will wear his pager 24 hrs./day 7 days a week. He can be contacted immediately. * * * [Claimant] will then contact the appropriate person."

The employer had not spoken with claimant before the issuance of the memorandum.

Claimant responded to employer in writing:

"I would require an additional $500.00 per week to carry a pager after work hours even for the purpose of calling the appropriate person to fix the problem. The reasons for this are obvious. If I followed [employer's] guidelines I would not be allowed to have even one drink 24 hrs a day 7 days a week. * * * I also enjoy hunting and fishing in remote areas where there are no phones. This option would also be closed to me."

---

[1] ORS 657.176(2) provides, in part:

"An individual shall be disqualified from the receipt of benefits until the individual has performed service in employment subject to this chapter, or for an employing unit in this or any other state or Canada or as an employee of the Federal Government, for which remuneration is received which equals or exceeds four times the individual's weekly benefit amount subsequent to the week in which the act causing the disqualification occurred, if the authorized representative designated by the director finds that the individual:

"* * * * *

"(c) Voluntarily left work without good cause[.]"

Employer and claimant met, and employer refused claimant's demand for additional compensation. The Board found that at that time, employer had no plans to discharge claimant. Claimant then told employer that he was unwilling to wear the pager and that employer should look for someone else to complete the project. He also told employer that he would be willing to stay on the job until a replacement could be hired or as long as employer needed him. Employer selected a date, and claimant worked until that date.

 Claimant does not challenge the Board's findings. He argues only that the Board's findings do not support its conclusion that claimant left work voluntarily, and, in the alternative, that if he did leave voluntarily, that the findings do not support the conclusion that he did so without good cause. Even though we might arrive at a different conclusion from the Board's, we will not overturn the Board so long as there is evidence to support its finding and a rational relationship between its findings and its legal conclusions. *Bettis v. Employment Div.*, 127 Or App 653, 656, 874 P2d 96 (1994).

We begin with the rule adopted under ORS 657.176(2)(c) regarding the difference between a discharge and the voluntarily leaving of employment. OAR 471-30-038(2) provides:

"The distinction between voluntary leaving and discharge is:

"(a) If the employee could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work;

"(b) If the employee is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge."

The Board made the following findings pertinent to its conclusion that claimant left work voluntarily:

"(16) The employer had no plans to discharge claimant prior to [receiving claimant's memo requesting $500.00 week.] (17) The employer had continuing work for claimant if claimant had been willing to wear the pager. (18) Claimant told the employer he was unwilling to wear the pager

and that employer should look for someone else to handle the project and that he would be willing to stay until a replacement could be found or as long as employer needed; the employer suggested that claimant would leave work as of July 7, 1995, and claimant did so."

Claimant asserts that our holdings in *J.R. Simplot Co. v. Employment Div.*, 102 Or App 523, 795 P2d 579 (1990); *Silver Eagle Mfg. Co. v. Employ. Div.*, 95 Or App 635, 770 P2d 607 (1989); and *Pembroke v. Employment Division*, 67 Or App 725, 680 P2d 17, *rev den* 297 Or 824 (1984), require that the Board conclude that there was a discharge. In *Simplot,* the Board ruled that the claimant had been discharged based on a finding that the employer did not allow the claimant to work until the end of his notice period. We held that the fact that the claimant agreed to leave earlier than his original notice date

"wholly undermine[d] the evidence on which EAB relied to find that employer terminated his employment. There is not substantial evidence to support EAB's finding that employer would not allow claimant to work until [his original notice date.]" *Simplot,* 102 Or App at 528.

In *Silver Eagle,* we held that the Board's finding that the employer "told claimant not to work for the two week notice period" was supported by substantial evidence and constituted a discharge. In *Pembroke,* the Board concluded that the claimant voluntarily quit. We reversed the Board because of evidence that the claimant was willing to continue working for an indefinite period but her employer would not permit her to do so. Contrary to claimant's suggestion, our holdings in these cases do not compel the conclusion that a discharge occurred here.

In this case, claimant told employer that he refused to work under the condition imposed by employer. He also said that he was willing to stay until a replacement was hired. He argues that because no replacement was actually hired by the time he left, he was discharged within the meaning of OAR 471-30-038(2)(b) and the holdings of the above cases. We disagree, because it does not necessarily follow from the fact that he was willing to stay until a replacement was hired, that he was "not allowed to do so." The Board

found that claimant initiated the separation from employment and that he was willing to stay *either* until a replacement was hired *or* as long as the employer needed. Based on those findings, the Board concluded that:

> "[Claimant] gave the employer the ability to select the ending date of his notice period by telling employer that he would work as long as the employer needed, and the employer selected July 7, 1995. * * * Claimant, in effect, agreed to leave on July 7, 1995, by telling the employer he would work as long as the employer needed him."

The Board's findings are supported by substantial evidence, and the Board's conclusion that claimant voluntarily quit on July 7 pursuant to his agreement with employer rationally follows.

■ The next question is whether claimant had "good cause" for voluntarily leaving. If he did, he is entitled to benefits under ORS 657.176(2)(c).[2]

---

[2] The Board ruled:

"We are not persuaded that claimant faced a grave situation. Although wearing a pager 24 hours per day instead of only during on-duty hours was a new requirement for claimant, claimant has not shown that it would have been a substantial increase in responsibility. The client that wanted to have prompt access to claimant previously had been able to contact an answering service after hours. Prior to June 26, 1995, the practice was for the answering service to first try to contact claimant as the project manager at his home number. The client also had claimant's home number and had contacted claimant outside of work hours to address problems. The pager policy would merely have eliminated the answering service as a middle step in the contact process. Further, we are not persuaded that the pager would have required any significant action on claimant's part. The client was only to use the pager in emergency situations. The employer reported that over two months, the client had used the pager two times. Also, when claimant was to be paged, claimant's responsibility did not include servicing the crisis. Claimant's responsibility was only to put the client in contact with the proper subordinates to address the emergency. A reasonable and prudent person of normal sensitivity would not perceive this as a grave situation.

"We are also persuaded that claimant had reasonable alternatives to quitting work. Claimant's sole response to the memorandum was to state that he would only wear the pager if he were paid a substantial amount of money. Claimant suggested a sum representing over 2/3's of his then wage for what did not amount to a significant increase in duties. When the employer rejected that demand, claimant did not explore any other options. A reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would have inquired as to what alternatives were available. Had he inquired, he would have learned that the employer was willing to compensate him by giving him extra vacation each year. Also, the employer was willing to assure that the pager would be rotated so that claimant could have unrestricted time as needed." (Footnote omitted.)

OAR 471-30-038(4) provides:

> "Good cause for voluntary leaving work under ORS
> 657.176(2)(c) is such that a reasonable and prudent person
> of normal sensitivity, exercising ordinary common sense,
> would leave work. * * * [T]he reason must be of such gravity
> that the individual has no reasonable alternative but to
> leave work."

The Board concluded that claimant did not face a grave situation because there were reasonable alternatives to quitting and claimant could have learned what they were, had he inquired further. Claimant contends that his letter was a sufficient inquiry into the availability of alternatives because it fully advised employer of the nature of his concerns and that employer communicated that there would be no further negotiation on the matter. Consequently, the Board erred, according to claimant, because it did not make findings that support its conclusion that claimant lacked "good cause" for voluntarily leaving.

A necessary predicate to the Board's conclusion that faults claimant for not exploring the availability of reasonable alternatives to quitting, is a finding that employer was willing to consider other alternatives. There is evidence in the record that suggests that employer's memo was an "all or nothing" proposition. The following colloquy between the administrative law judge and employer is illustrative:

> "Q. Now, he also said when he delivered his memo to you * * * that you said there would be no negotiation regarding compensation, or anything. Is that —
>
> "A. I - I probably - I mean, I don't remember exact conversation, but I probably read the memo, got to the $500.00 thing and said, 'That ain't gonna happen.'
>
> "Q. So you - you were sort of put off by his request for $500.00 a week?
>
> "A. Very much so.
>
> "Q. Okay. So at - at that point, could you have given him the indication that there would be no negotiation?
>
> "A. I could've, yes."

We cautioned, in *Bremer v. Employment Division*, 52 Or App 293, 296, 628 P2d 426 (1981), regarding the application of OAR 471-30-038(4):

> "[The] rule does *not* require, as the Board appears to suggest, that a claimant must show in every case that she asked about or otherwise explored alternatives to leaving work. There are cases in which any such effort would be useless." (Emphasis in original.)

We concluded that when the facts in the record present the issue of whether a discussion of reasonable alternatives to leaving work would have been useless, the Board must also address that question. Here, the Board failed to address in its findings whether further discussion between claimant and employer would have been fruitless even though it faulted claimant for not pursuing any alternatives. Its conclusion that claimant did not have good cause to quit is therefore unsupported by its findings and requires remand.

Reversed and remanded for reconsideration.