Submitted July 18, reversed and remanded September 5, 2013

Maria L. AGUILAR,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Salem-Keizer School District,
*Respondents.*

Employment Appeals Board
12AB0227; A151042

310 P3d 706

Jovanna L. Patrick and Hollander, Lebenbaum & Gannicott filed the brief for petitioner.

Denise G. Fjordbeck, Attorney-in-Charge, waived appearance for respondent Employment Department.

No appearance for respondent Salem-Keizer School District.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

This petition for judicial review comes to us following an Employment Appeals Board (board) decision to deny claimant unemployment benefits. Claimant contends that the board erred by adopting an administrative law judge's (ALJ) order that concluded that claimant did not have "good cause" for voluntarily resigning her position, despite the fact that employer was going to discharge claimant the following day. For the following reasons, we reverse and remand.

Except where noted otherwise, the pertinent facts are not disputed and we therefore describe them consistently with the board's findings and the record that supports those findings. *McDowell v. Employment Dept.*, 348 Or 605, 608, 236 P3d 722 (2010). "In light of the board's factual findings, we then determine whether its conclusions reasonably follow from the facts found, that is, whether its conclusions are supported by substantial reason." *Strutz v. Employment Dept.*, 247 Or App 439, 442, 270 P3d 357 (2011) (internal quotation marks omitted).

Claimant worked for employer, the Salem-Keizer School District, for 14 years as a teacher. Claimant was a full-time fourth grade teacher during the 2010-11 school year. Employer intended to place claimant at the head of a third-grade bilingual classroom for the 2011-12 school year. On August 23, 2011, however, employer informed claimant that it would terminate her employment[1] because she lacked certain endorsements to her teaching certificate that are required to teach in a bilingual classroom. The only evidence in the record indicates that claimant was not told until June 2011 that she would be assigned to a bilingual

---

[1] The ALJ found that claimant resigned after she was told that "she would most likely be discharged" the following day, a finding that the board adopted. However, claimant, the only person to testify at the hearing, testified that employer had unequivocally told her that she *would* be terminated on October 11, 2011. Although the board was not required to believe claimant, the board could make a contrary finding only if "it could articulate substantial reasons for rejecting claimant's uncontradicted testimony * * *." *McDowell*, 348 Or at 615 n 5. Neither the board nor the ALJ made any attempt to explain why it chose to disregard claimant's uncontradicted testimony in that one regard. Thus, we agree with claimant that there is nothing in the record to support the board's finding that employer was "most likely"—rather than "certainly"—going to terminate claimant's employment on October 11, 2011.

classroom for the upcoming school year. Claimant testified that she had, prior to receiving the discharge notification, taken some of the course work that is required to obtain the endorsements, but she apparently did not complete all the necessary courses.

After receiving employer's notification of its decision to terminate her employment, claimant met twice with employer's representatives in hopes of finding a position that would not require her to possess the bilingual teaching endorsements that she had failed to obtain. While discussing her options, she was told by employer, in her words, that "I could resign and that—that was about it." Claimant also testified that she asked to be placed on leave in order to pursue and obtain the relevant endorsements and that employer denied the request. According to claimant, she signed an agreement stating that, if she resigned, employer would not oppose a decision by her to seek unemployment benefits. The agreement also purportedly stated that, if she were subsequently rehired by employer following a resignation, she would regain the seniority that she was then currently entitled to, an offer that would not obtain if she were discharged.

Claimant's attorney and a union representative were present at those meetings. Claimant was subsequently advised by both of them that it would be very difficult for her to obtain another teaching job if she was terminated because she would have to reveal that fact to potential future employers. Claimant was also informed that it would be easier for her to obtain future employment as a teacher if she resigned. Accordingly, claimant resigned on October 10, 2011, one day before the date that employer had informed her that she would be terminated.

Claimant subsequently sought unemployment benefits. The Employment Department (department) denied benefits on the ground that her decision to voluntarily leave work to avoid being discharged did not constitute good cause. Claimant then sought and received a hearing before an ALJ. Employer did not appear at that hearing and claimant was the only witness. In a final order, the ALJ denied benefits on the same basis as the department. Claimant appealed to the board, which adopted, in full, the ALJ's order affirming

the denial of benefits. This timely petition for judicial review followed.

Claimant first asserts that the board erred by failing to make its own findings and conclusions, as claimant contends that it was required to do by ORS 183.470(2). The board's decision read, in relevant part, "[The board] reviewed the entire hearing record. On *de novo* review and pursuant to ORS 657.275(2), the hearing decision under review is **adopted**." (Boldface in original.) Relying on *Opp v. Employment Dept.*, 242 Or App 673, 259 P3d 15 (2011), claimant contends that the board was required to specifically adopt the ALJ's findings and conclusions, as opposed to adopting the "hearing decision under review." In *Opp*, we reversed a board determination that "affirmed without opinion" an ALJ decision. *Id.* at 675 (boldface omitted). We stated that such a determination failed to comply with ORS 183.470(2)[2] because the board's order was "entirely devoid of findings or conclusions." *Id.* at 676. That is not the case here. In this instance, the board stated that it was adopting the ALJ's hearing decision and specifically cited the statutory authority that permitted it to adopt the ALJ's findings and conclusions. *See* ORS 657.275(2) ("The board may enter its own findings and conclusions or may *adopt* the findings and conclusions of the administrative law judge, or any part thereof." (Emphasis added.)). The decision thus sufficiently conveyed the board's intent to adopt the ALJ's factual findings and legal conclusions.

Claimant next asserts that the board erred in concluding that she did not have good cause to resign her job. A claimant is disqualified from collecting unemployment benefits if, as pertinent to this case, that claimant "[v]oluntarily left work without good cause." ORS 657.176(2)(c). Claimant in this case concedes that she voluntarily resigned her position, and the relevant question is thus whether she had good cause to do so. The Supreme Court has articulated the good cause standard as "whether a reasonable person of normal

[2] ORS 183.470(2) provides:

"A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

sensitivity, exercising ordinary common sense, would have considered the circumstances to be sufficiently grave that he or she had no alternative but to resign." *McDowell*, 348 Or at 614.

This case is similar to *McDowell*. There, a probationary teacher violated a school policy by showing his students a video clip containing profanity. *Id.* at 608. The school's personnel director informed the claimant that he was going to recommend the claimant's discharge at an upcoming school board meeting. The claimant was not advised about whether he would have an opportunity to be heard at the board meeting. A union attorney advised the claimant that there was "absolutely no chance" that the school board would overrule the discharge recommendation and, accordingly, advised the claimant to resign before being discharged. *Id.* at 609. The claimant did so on the same day that the school board was scheduled to meet. He subsequently sought unemployment benefits.

The issue before the Supreme Court was whether the claimant had good cause for resigning when he did. *Id.* at 613. In applying the good cause standard, the court relied heavily on the fact that the claimant knew that a professional stigma attached to discharged teachers and that a discharge would make it more difficult for him to obtain employment as a teacher in the future. It also emphasized the fact that the employer had informed the claimant that he could resign; the Supreme Court took that fact as evidence that "a reasonable and prudent person likely would take the employer's comments to be tacit encouragement to quit in lieu of being discharged to spare the repercussions of a discharge on future employment opportunities." *Id.* at 615. In light of the above factors, the court concluded that "the board's factual findings, and the evidence in the record that supports those findings, required the good cause determination to be resolved in claimant's favor." *Id.* at 614. So too, here.

The uncontested evidence in this case is that claimant knew, after being so advised by her attorney and a union representative, that a discharge would seriously hamper her future efforts to find another teaching job. After being told

that her employment was going to be terminated, claimant made two unsuccessful attempts to try to find an alternative position with employer. Claimant also attempted to negotiate a leave arrangement so that she could obtain the required endorsements for the position that employer had recently assigned her. She was also told by employer of certain additional benefits of resigning, namely, that employer would not contest her decision to seek unemployment benefits and that, if she were subsequently rehired by employer, she would regain the seniority that she had accumulated over her 14 years of service to employer. She resigned one day before employer was set to discharge her. Given the benefits that would obtain by resigning—or, more accurately, the detriments that would be avoided by doing so—a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would not continue her employment to its inevitable cessation one day later. Claimant had good cause for voluntarily resigning.[3]

Reversed and remanded.

---

[3] Given our disposition on claimant's good-cause argument, we need not, and do not, reach her argument that she was entitled to unemployment benefits under ORS 657.176(7).