Argued and submitted January 8, reversed and remanded May 29, 2014

Linda L. NIELSEN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Westwind Landscape Supply,
*Respondents.*

Employment Appeals Board
12AB0123; A150925

328 P3d 707

Tyler J. Volm argued the cause for petitioner. With him on the briefs were William A. Drew and Elliott, Ostrander & Preston, P.C.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent Employment Department. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

No appearance for respondent Westwind Landscape Supply.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Claimant seeks review of an order of the Employment Appeals Board that denied her unemployment insurance benefits on the ground that she voluntarily left work without good cause. *See* ORS 657.176(2)(c);[1] *see also* OAR 471-030-0038(4).[2] We write to address only one of claimant's arguments—that the board erred when it adopted an administrative law judge's (ALJ) order concluding that claimant, who left work in part because she was required to work overtime without receiving overtime pay, failed to pursue reasonable alternatives and failed to establish good cause for quitting when she failed to complain to employer about her unpaid wages or file a complaint with the Bureau of Labor and Industries (BOLI).[3] We conclude that claimant voluntarily left work with good cause. Accordingly, we reverse and remand.

The relevant facts are not in dispute, and we state those facts "consistently with the board's findings and the record that supports those findings." *Aguilar v. Employment Dept.*, 258 Or App 453, 454, 310 P3d 706 (2013). We review the board's order "for substantial evidence and errors of law, and to determine whether its analysis comports with substantial reason." *Campbell v. Employment Dept.*, 256 Or App 682, 683, 303 P3d 957 (2013) (internal brackets and quotation marks omitted).

---

[1] ORS 657.176(2)(c) provides, in part:

"An individual shall be disqualified from the receipt of benefits * * * if the authorized representative designated by the director finds that the individual:

"* * * * *

"(c) Voluntarily left work without good cause[.]"

[2] OAR 471-030-0038(4) provides, in part:

"Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. * * * [F]or all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

[3] Claimant also argues that she had good cause to leave work because she was required to operate heavy equipment without training, because she was subjected to sexual harassment, and because she received a definite job offer. Our disposition of this case makes it unnecessary for us to address those alternative arguments.

Claimant worked as an office manager for Westwind Landscape Supply for approximately one year. During the course of her employment, claimant faced the "ongoing problem" of underpayment—that is, her employer[4] "required her to work overtime without receiving overtime pay." Specifically, claimant was "working more than 38 hours, but [employer] was only paying [her] for 38 hours" for "at least an entire year[.]" Claimant was not "the only one" who was underpaid. Other people who worked for employer

> "would put in their overtime and [employer would] only pay them for a certain amount of hours. And he'd say, 'Well, I know you were sitting on the side of the road having lunch, and I know you were probably doing this.' You know, and I—'I don't believe you were really *** fully working that entire time.'"

Claimant was also afraid of employer. She had "actually witnessed former staff that were trying to get their full pay, you know, almost—with [claimant] almost having to call 9-1-1 because there was almost a physical brawl over these things happening." Claimant was "not a confrontation person." There were times when she put "the hint out there" about her unpaid wages, but she did not complain to employer because she did not want to anger him. Claimant also did not file a complaint with BOLI.

Claimant left work and sought unemployment benefits, which the Employment Department denied on the ground that claimant voluntarily left work without good cause. ORS 657.176(2)(c). After claimant appealed, an ALJ conducted a hearing and affirmed the Employment Department's decision to deny claimant benefits. Claimant then appealed to the board, and the board reversed the ALJ's order and remanded the case for additional proceedings. The ALJ conducted a second hearing and issued a final order affirming the Employment Department's decision to deny claimant benefits. In that order, the ALJ concluded:

> "To the extent that claimant quit because she was not getting paid for all hours worked, claimant established

---

[4] Although Westwind Landscape Supply is claimant's employer, the board's decision alternately refers to the company's owner as "supervisor" and "employer." For the sake of clarity, we refer to the owner as "employer" throughout this opinion.

"that she faced a grave situation. However, claimant failed to complain to the employer about the situation or file a complaint with the Bureau of Labor and Industr[ies]. Claimant failed to pursue reasonable alternatives, and failed to establish good cause for quitting."

After claimant again appealed to the board, the board adopted the ALJ's final order. Claimant timely petitioned this court for review.

ORS 657.176(2)(c) disqualifies an individual who "[v]oluntarily left work without good cause" from receiving unemployment benefits. Good cause for voluntarily leaving work "is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." OAR 471-030-0038(4). A claimant's reason for quitting "must be of such gravity that the individual has no reasonable alternative but to leave work." *Id.* Thus, good cause is "an objective standard that asks whether a reasonable and prudent person would consider the situation so grave that he or she had no reasonable alternative to quitting." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010) (internal quotation marks omitted). In other words, the question is "whether a reasonable person of normal sensitivity, exercising ordinary common sense, would have considered the circumstances to be sufficiently grave that he or she had no alternative but to resign." *Id.* at 614. Accordingly, we must determine whether, in light of the board's findings in this case, that standard was met as a matter of law. *Id.* at 620.

Two cases are helpful to our analysis: *Westrope v. Employment Dept.*, 144 Or App 163, 925 P2d 587 (1996), and *J. Clancy Bedspreads & Draperies v. Wheeler*, 152 Or App 646, 954 P2d 1265 (1998). In *Westrope*, we cautioned that OAR 471-030-0038(4) "'does *not* require, as the Board appears to suggest, that a claimant must show in every case that she asked about or otherwise explored alternatives to leaving work. There are cases in which any such effort would be useless.'" 144 Or App at 170 (quoting *Bremer v. Employment Division*, 52 Or App 293, 296, 628 P2d 426 (1981) (emphasis in *Bremer*). Later, in *J. Clancy Bedspreads & Draperies*, we affirmed the board's "conclusion that filing a wage claim

with BOLI while remaining employed was not a reasonable alternative for [the] claimant[,]" based on its finding that the employer had refused to pay the claimant overtime pay. 152 Or App at 650-51. As we subsequently explained, our conclusion in *J. Clancy Bedspreads & Draperies* rested on the assumption that the claimant was subjected to a past default on wages *"plus the substantial risk of recurrence." Marian Estates v. Employment Dept.*, 158 Or App 630, 637, 976 P2d 71 (1999) (emphasis in original).

As we explain more fully below, the board incorrectly concluded that claimant voluntarily left work without good cause. The board's findings, and the evidence in the record that supports those findings, required the board to conclude that claimant established good cause to leave work.

First, under the circumstances in this case, complaining to employer about unpaid wages was not a reasonable alternative to leaving work because it would have been useless or even dangerous for claimant to do so. The uncontested evidence demonstrates that employer was unwilling to pay overtime to workers who complained about their pay. That is, when others complained, employer would "say, 'Well, I know you were sitting on the side of the road having lunch, and I know you were probably doing this.' You know, and I—'I don't believe you were really * * * fully working that entire time.'" Further, claimant had "actually witnessed former staff that were trying to get their full pay, you know, almost—with [claimant] almost having to call 911 because there was almost a physical brawl over these things happening." As a result, claimant "was afraid of [employer]." Under those circumstances, a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would not have complained to employer about the unpaid wages.

Second, under the circumstances in this case, filing a complaint with BOLI while remaining employed was not a reasonable alternative to leaving work because that course of action would have exposed claimant to a substantial risk of continuing underpayment. Claimant testified that underpayment was an "ongoing problem" for her. Specifically, she testified that the difference between her time sheets and her

pay stubs was two hours per week for "at least an entire year" and she provided some pay stubs to support that testimony. Thus, each passing week, claimant was exposed to the substantial risk that she would never get paid for the hours that she worked. Under those circumstances, a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would not have continued to work indefinitely for employer, without proper payment, while waiting for BOLI to process a complaint.

In sum, we conclude that the board erred in concluding that claimant left work without good cause. Under the facts found, a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would not have complained to employer about the unpaid wages or continued to work indefinitely, incurring the substantial risk of underpayment, while waiting for BOLI to process a complaint. Rather, such a person would have considered the circumstances to be sufficiently grave that he or she had no alternative but to resign. Accordingly, under the facts of this case, leaving work was the only reasonable course of action, and the board was obligated to conclude, as a matter of law, that claimant had good cause to leave work. *See McDowell*, 348 Or at 620 (concluding, as a matter of law, that the claimant, who resigned to avoid the grave consequences associated with discharge, had good cause to leave work, and that the board "was obligated to so conclude"); *see also Aguilar*, 258 Or App at 458 (concluding that the claimant had good cause to voluntarily resign). Accordingly, we reverse and remand.

Reversed and remanded.