Submitted November 7, 2014, reversed and remanded October 14, 2015

Cynthia A. EARLY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Clackmas County,
*Respondents.*

Employment Appeals Board
2014EAB0240; A156567

360 P3d 725

Cynthia A. Early filed the brief *pro se.*

Denise G. Fjordbeck waived appearance for respondent Employment Department.

No appearance for respondent Clackamas County.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Claimant seeks judicial review of a decision by the Employment Appeals Board (board) that denied her unemployment benefits on the ground that she voluntarily left work without good cause. *See* ORS 657.176(2)(c) (individuals who voluntarily leave work without good cause are disqualified from receiving unemployment benefits). We conclude that the board erred in determining that claimant had reasonable alternatives to quitting and, therefore, had voluntarily left work without good cause. Accordingly, we reverse and remand.

We take the facts from the board's findings and from "the undisputed evidence in the record that is not inconsistent with those findings." *Campbell v. Employment Dept.*, 245 Or App 573, 575, 263 P3d 1122 (2011). "We review the [board's] order for substantial evidence and errors of law, and to determine whether its analysis comports with substantial reason." *Campbell v. Employment Dept.*, 256 Or App 682, 683, 303 P3d 957 (2013) (internal brackets and quotation marks omitted).

Clackamas County (employer) hired claimant as a financial analyst. Two years later, employer hired Fielitz as a comptroller. Claimant and Fielitz, who worked together on employer's fiscal services team, did not get along. Although Fielitz was not claimant's supervisor, she removed computer files from claimant's assigned work folder and distributed them to colleagues, pointing out purported errors. Claimant requested a meeting between herself, Fielitz, and Edwards, a manager, to clarify roles and resolve frictions between them. The meeting was unsuccessful, and the poor relationship between claimant and Fielitz continued. According to claimant, Fielitz would talk to her condescendingly, did not inform her of important new information, and did not allow her to present or explain her views during meetings.

During the next six months, claimant frequently sought help from Rodamaker, her and Fielitz's direct supervisor, to mend her relationship with Fielitz. Rodamaker mediated another meeting between claimant and Fielitz that was intended to improve their relationship. Claimant brought a detailed list of complaints and expressed her view

that Fielitz did not appreciate her work and contributions to team projects. Fielitz did not prepare for the meeting, and it ended without any success. Afterwards, employer instructed claimant and Fielitz to communicate only by email.

Claimant had been diagnosed with depression. The increased stress and anxiety from the conflict with Fielitz exacerbated her symptoms of depression. She sought medical assistance through an employer-provided employee assistance program, and saw a physician who prescribed antidepressant medication. Claimant also started to search for a new job.

Claimant's relationship with Fielitz continued to deteriorate. At one point, Fielitz commented to a temporary employee that claimant would inevitably have a "nervous breakdown," which would allow the temporary employee to have claimant's job. That employee told claimant about the comment, and claimant reported it to Rodamaker. Fielitz denied making the comment, and Rodamaker took no action on the matter.

Employer then placed claimant under Fielitz's direct supervision. Although claimant found that new situation upsetting, she tried to make the arrangement work at first. She did not seek assistance from human resources or senior management because she was not aware of what help they could provide beyond what she had already sought. Claimant did not request a leave of absence either, because she had already exhausted her paid vacation time and sick leave. Around that time, claimant began having suicidal thoughts.

About two weeks after Fielitz became claimant's supervisor, claimant approached Fielitz to express concerns about assignment deadlines. Fielitz rolled her eyes, muttered something, and walked away. At that point, claimant concluded that she could not continue working with Fielitz, and gave employer 30-days' notice of her resignation.

After giving notice, claimant met with Stodic, a human resources employee, who told her that she could rescind her resignation within 30 days. Claimant told him that she saw no choice but to resign unless Fielitz's behavior

changed. Claimant also met with Swift, a senior manager, and she explained to him that the conflict with Fielitz had reached a point where she felt that her only choice was to resign. The friction with Fielitz continued to grow during the notice period, and neither Fielitz nor employer made any efforts to address the issues that led to claimant's resignation.

At the end of her 30-day notice period, claimant resigned and sought unemployment benefits. The Employment Department concluded that claimant voluntarily left work without good cause and, accordingly, denied benefits pursuant to ORS 657.176(2)(c). Claimant requested and received a hearing before an administrative law judge (ALJ). The ALJ set aside the Employment Department's order, reasoning that "[t]emporary leave would not appear to resolve the underlying issue, and further recourse with management would reasonably appear futile to a person in claimant's condition." The ALJ thus concluded that "[c]laimant faced a grave situation when she began having suicidal thoughts after Ms. Fielitz became her supervisor" and that "a reasonable and prudent person with depression would see no reasonable alternative to removing themselves from the employment situation."

Employer appealed to the board, which set aside the ALJ's order and disqualified claimant from receiving benefits. According to the board, claimant had reasonable alternatives to quitting, and therefore left work without good cause. The board reasoned:

> "[C]laimant could have sought conflict resolution services through the employer's human resources department or senior management. Claimant did not show that the comptroller's behavior was so egregious that claimant could not have pursued those options rather than quitting when she did. Claimant gave the employer thirty days' notice of her resignation. It is more probable than not that claimant would have quit work immediately if her situation had been so grave that she had no reasonable alternative but to quit.

> "It is also undisputed that leave was available to claimant, and that she did not request a leave of absence. Claimant testified she chose not to take a leave of absence

because the employer did not offer paid leave, but failed to show that taking unpaid leave was not a reasonable alternative to quitting. \* \* \* The ALJ concluded that a temporary leave of absence was not a reasonable alternative because 'temporary leave would not appear to resolve the underlying issue' with the comptroller. We disagree that [taking] a leave of absence to address her health issues would necessarily have been futile merely because the comptroller's behavior may not have changed."

(Footnote omitted.) Claimant timely petitioned for judicial review.

ORS 657.176(2)(c) provides that "[a]n individual shall be disqualified from the receipt of benefits \* \* \* if the [Employment Department] finds that the individual: \* \* \* [v]oluntarily left work without good cause[.]" "Good cause" is defined by OAR 471-030-0038(4):

"Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. For an individual with a permanent or long-term 'physical or mental impairment' (as defined at 29 CFR §1630.2(h))[1] good cause for voluntarily leaving work is such that a reasonable and prudent person with the characteristics and qualities of such individual, would leave work. \* \* \* [T]he reason must be of such gravity that the individual has no reasonable alternative but to leave work."

"[G]ood cause" is "an objective standard that asks whether a 'reasonable and prudent person' would consider the situation so grave that he' or she had no reasonable alternative to quitting." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010). Claimant suffered from depression, and it is undisputed that her depression was a long-term physical impairment under 29 CFR section 1630.2(h).

---

[1] 29 CFR section 1630.2(h) provides, in part:

*"Physical or mental impairment* means—

"\* \* \* \* \*

"(2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities."

(Emphasis in original.)

Thus, the question in this case is whether, based on the evidence in the record, a reasonable and prudent person with the characteristics and qualities of someone with depression would have considered the situation so grave that he or she had no reasonable alternative but to voluntarily leave work. *See PUC v. Employment Dept.*, 267 Or App 68, 73, 340 P3d 136 (2014) (where the claimant had asthma, considering whether "a reasonable and prudent person in claimant's position—having the characteristics and qualities of an individual with asthma—would have considered the situation so grave that he or she had no reasonable alternative but to voluntarily leave work" (some internal quotation marks omitted)). In this case, we must determine, in light of the board's findings and the consistent evidence in the record, whether that standard was met as a matter of law. *Nielsen v. Employment Dept.*, 263 Or App 274, 277, 328 P3d 707 (2014). The board implicitly determined, as do we, that claimant's work situation was grave. There is no dispute that claimant's work was making her sick and suicidal. The board, however, concluded that there were reasonable alternatives to quitting work. We disagree with that conclusion.

As we explained in *Westrope v. Employment Dept.*, 144 Or App 163, 170, 925 P2d 587 (1996), to demonstrate good cause, a claimant need not demonstrate "in every case that she asked about or otherwise explored alternatives to leaving work. There are cases in which any such effort would be useless." (Internal quotation marks omitted.) Here, the board concluded that claimant had two reasonable alternatives to quitting: (1) seeking conflict resolution services through employer's human resources department or senior management or (2) requesting an unpaid leave of absence. We disagree with the board's legal conclusions that those options were reasonable alternatives to quitting. Instead, the board's findings, and the evidence in the record that supports them, required the board to conclude that claimant had established good cause for leaving work.

First, seeking out additional conflict resolution services was not a reasonable alternative to leaving work after claimant tried and failed to resolve the conflict for six months. She attempted to reach a solution with Fielitz

personally and through their mutual supervisor, without success. She requested, prepared for, and attended mediated reconciliation meetings. Despite claimant's efforts, Fielitz's behavior did not change. Before claimant's resignation became final, she informed senior management and human resources that she was resigning because of the conflict. She testified that, after submitting her notice, she told Stodic, a human resources employee, and Swift, a senior manager, that she felt she had no choice but to resign because of Fielitz's behavior. They did not offer claimant any other alternative, implicitly suggesting that there was none.

To a reasonable and prudent person in claimant's position, further attempts at resolving the conflict would have appeared futile at the time claimant resigned. *See Nielsen*, 263 Or App at 278 (confronting the employer about unpaid overtime would have been futile because the claimant was aware that the employer was "unwilling to pay overtime to workers who complained about their pay" and that he had become physically violent in the past when asked about overtime). The board did not find, and there is nothing in the record to suggest, that additional conflict resolution services would have improved claimant's relationship with Fielitz given claimant's unsuccessful past efforts to that end. Thus, a reasonable and prudent person with the characteristics and qualities of someone with depression would not have sought out additional conflict resolution resources.[2]

---

[2] We note that the board concluded that claimant could have sought out additional conflict resolution resources because she provided 30-days' notice before resigning: "It is more probable than not that claimant would have quit work immediately if her situation had been so grave that she had no reasonable alternative but to quit." OAR 471-030-0038(4) does not require that an employee quit work without notice in order to show good cause. The board's suggestion that claimant lacked good cause at the time that she gave her notice to quit misses the mark. The appropriate time to evaluate whether claimant had good cause was not when claimant provided her notice, but when she actually quit the job. Claimant did not leave work until the end of her notice period because she had 30 days to withdraw her resignation. Events occurred during that period that reinforced the reasonableness of claimant's decision to quit work. The board improperly evaluated whether claimant had good cause prior to the time she actually quit. Accordingly, the board misconstrued OAR 471-030-0038(4) in reaching that conclusion. Given our conclusion that, on this record, claimant had no reasonable alternative to quitting at the end of her notice period, any remand to the board to apply OAR 471-030-0038(4) properly would be gratuitous.

Second, taking a leave of absence to address claimant's health problems was not a reasonable alternative to leaving work because it would not have resolved the conflict with Fielitz. The board did not find, and there is nothing in the record indicating, that a leave of absence would have improved claimant's relationship with Fielitz. *See Warkentin v. Employment Dept.*, 245 Or App 128, 133, 261 P3d 72 (2011) (determining that the board's conclusion that a leave of absence was a reasonable alternative to leaving work was not supported by substantial evidence, in part, because "there was no evidence that any leave would remedy the work conditions upon claimant's return"). A temporary leave from work, no doubt, would have postponed the experience of additional stress from continued interaction with Fielitz. A permanent leave from work avoided that stress altogether. A reasonable and prudent person with the characteristics and qualities of someone with depression would not have settled on an option that yielded no solution to the conflict.

The board erred in concluding that claimant quit without good cause. In this case, a reasonable and prudent person with the characteristics and qualities of someone with depression would not have attempted to pursue additional conflict resolution services or taken a leave of absence. Rather such a person would have seen her situation as so grave that she had no reasonable alternative but to leave work. Accordingly, under the facts of this case, leaving work was the only reasonable course of action, and the board was obligated to conclude, as a matter of law, that claimant left work with good cause. *See Nielsen*, 263 Or App at 279 (concluding, as a matter of law, that the claimant left work with good cause); *see also McDowell*, 348 Or at 619-20 (the claimant, who resigned to avoid grave consequences associated with discharge, had good cause to leave work as a matter of law).

Reversed and remanded.