Argued and submitted November 28, 2016, reversed and remanded
March 1, 2017

Brenda D. KAY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Salmon River Contractors, Inc.,
*Respondents.*

Employment Department
2015EAB0518; A160405

391 P3d 969

Kevin T. Lafky argued the cause for petitioner. With him on the brief was Leslie D. Howell.

Denise G. Fjordbeck waived appearance for respondent Employment Department.

No appearance for respondent Salmon River Contractors, Inc.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**SHORR, J.**

Claimant petitions for review of an order by the Employment Appeals Board (EAB) denying her unemployment benefits. On appeal, claimant raises two assignments of error. First, claimant argues that the EAB erred in concluding that she voluntarily left her employment. Second, claimant argues that the EAB's order lacked substantial evidence and reason when it concluded that claimant voluntarily left her employment without good cause. We write only to address claimant's second assignment of error. Claimant argues that the EAB lacked substantial evidence and reason for its conclusion that she lacked good cause for voluntarily leaving her job after the owner of her employer, Salmon River Contractors Inc. (Salmon River), sent her two text messages indicating that the owner believed that claimant and her husband were bad people and stating that he was calling the police on them. We agree that the EAB's decision lacked substantial reason and, accordingly, reverse and remand.

We state the following "facts from [the] EAB's findings and the undisputed evidence in the record that is not inconsistent with those findings." *See Campbell v. Employment Dept.*, 245 Or App 573, 575, 263 P3d 1122 (2011) (applying that standard). Claimant worked for Salmon River from July 22, 2011 to January 20, 2015. In April 2014, Salmon River's owner discharged claimant's husband. Around January 13, 2015, claimant learned that the owner of Salmon River had been giving negative references about her husband to her husband's prospective employers. Specifically, claimant discovered that the owner was telling her husband's prospective employers that her husband was a drug addict. After claimant learned of the owner's statements, claimant spoke to a crew leader about those statements, hoping that he could help mediate the conflict between claimant and the owner. The crew leader never resolved the conflict, and, despite the crew leader's failure, claimant never discussed the owner's statements with the owner directly.

Claimant began experiencing additional stress at work as a result of her knowledge of the owner's statements

about her husband. That stress caused claimant migraine headaches. Claimant left work early on January 20 because of one of those headaches. Claimant never returned to work after she left on January 20. Before January 21, pursuant to her employer's policy, claimant always contacted Salmon River's owner directly when she would be late or absent from work. However, from January 21 through January 24, claimant did not contact the owner despite numerous text and telephone messages that the owner had left her. Instead, claimant spoke every day from January 21 to January 24 with the crew leader who she hoped would mediate the dispute. Claimant did not tell the crew leader or anyone else at Salmon River when she was planning to return to work. Instead, claimant and the crew leader spoke about her dissatisfaction with the owner. After each phone call, the crew leader told the owner that he did not know if claimant would return to work.

On January 24, Salmon River's owner sent claimant two text messages. The first text message stated:

> "You and me can talk all the shit you want, but I'm still 36 years old with a multi-million dollar company and you're not. Thanks so much for the sabotage you created when I've done nothing but help you [and your husband]. You are bad people, full of jealousy. It's sad. Thank you both."

The second text message stated, "I need these files back in my office, and the rest of my files. I'm calling the police."[1] Claimant was unwilling to return to work after she received those text messages.

After January 24, 2015, claimant filed for unemployment. On April 27, 2015, the Oregon Employment Department served notice of an administrative decision on claimant that concluded that claimant voluntarily left work without good cause and, as a result, that claimant was denied unemployment benefits. Claimant filed a timely request for a hearing. After failing to appear at the initial

---

[1] Notably, that text message is the only evidence in the record that claimant had any files. When the ALJ asked claimant if she knew what files the owner was referring to in his text message, she stated, "No." The owner testified at the hearing, but he never discussed the files, and neither the ALJ nor claimant asked him about the files.

hearing, claimant appeared and testified at a second hearing, as did Salmon River's owner. Following the second hearing, the administrative law judge (ALJ) affirmed the decision of the department, and claimant appealed to the EAB, which affirmed the ALJ's decision.

In the relevant part of its decision, the EAB stated:

"Claimant quit her job because she was upset about the negative statements the owner made about her husband to prospective employers and about her and her husband in the text messages he sent her on January 24, 2015. Claimant did not show that the statements created a situation of such gravity that she had no reasonable alternative but to leave work when she did. Claimant had the reasonable option of attempting to discuss her concerns with the owner. Before he sent the text messages to claimant on January 24, the owner had left claimant several telephone and text messages. There is no evidence to show the telephone or text messages from the owner before January 24 were hostile in tone. Claimant did not return the messages. In the absence of any attempt by claimant to speak to the owner regarding her concerns, claimant failed to show that doing so was a futile act. Nor did claimant show that the owner's statements about her husband were false, or that the statements were otherwise so offensive that she had no reasonable alternative but to quit when she did. Nor did claimant show that, despite her migraines, she had to quit work immediately to preserve her health."

(Internal citation omitted.) Claimant appealed the decision. On appeal, she reasserts to us her argument that Salmon River's owner's negative statements about her husband, combined with the owner's January 24 text messages indicating that the owner believed claimant and her husband were "bad people" and that he was going to call the police, constituted good cause for voluntarily leaving Salmon River. More specifically, claimant asserts that the EAB's decision lacks substantial reason because, in contrast to the EAB's finding otherwise, "[a] reasonable and prudent person would think that talking to their employer after receiving messages [like the ones the owner sent her] would be a futile act." Neither the department nor Salmon River filed a brief on judicial review. For the reasons stated below, we agree

with claimant that the EAB's decision lacks substantial reason and, accordingly, reverse and remand.

We review the EAB's decision according to the standard provided in ORS 183.482(8)(c). "'That standard requires that the board's findings of fact be supported by substantial evidence and that its conclusions be supported by substantial reason, *i.e.*, its conclusions must reasonably follow from the facts found.'" *Campbell*, 245 Or App at 579 (quoting *Simpson v. Board of Parole*, 237 Or App 661, 663, 241 P3d 347 (2010)). When reviewing for substantial evidence and reason, our role is only "to determine whether [the] record, viewed as a whole, is capable of being read as *the agency* read it." *Pullam v. Employment Dept.*, 238 Or App 60, 64, 243 P3d 71 (2010) (emphasis in original).

An individual is disqualified from receiving unemployment benefits if the individual "[v]oluntarily [leaves] work without good cause." ORS 657.176(2)(c). Under OAR 471-030-0038(4), "[g]ood cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." "'[G]ood cause' is 'an objective standard that asks whether a reasonable and prudent person would consider the situation so grave that he or she had no reasonable alternative to quitting.'" *Early v. Employment Dept.*, 274 Or App 321, 326, 360 P3d 725 (2015) (quoting *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010) (alteration in original)).

Here, the EAB concluded that claimant lacked good cause for leaving work because "[c]laimant had the reasonable option of attempting to discuss her concerns with the owner." The EAB based that conclusion solely on its determination that "claimant failed to show that [discussing her concerns with the owner] was a futile act" because "[t]here is no evidence to show [that] the telephone or text messages from the owner *before* January 24 were hostile in tone" and "[c]laimant did not return [those] messages." (Emphasis added.)

The EAB's decision lacks substantial reason because the EAB failed to consider whether claimant had a "reasonable alternative[]" to voluntarily leaving work *"at the time*

*she left work." Constantine v. Employment Dept.*, 200 Or App 677, 683, 117 P3d 279 (2005) (emphasis added). Had the EAB reached that issue, it would have been obligated to address whether the owner's January 24 text messages "present[ed] the issue of whether a discussion of reasonable alternatives to leaving work" with her employer "would have been useless." *Westrope v. Employment Dept.*, 144 Or App 163, 170, 925 P2d 587 (1996). The EAB did not consider that question either. Because the EAB failed to address both questions, we reverse and remand.

As we have previously held, when determining whether a claimant had a reasonable alternative to leaving work, the EAB must decide whether that reasonable alternative existed *"at the time she left work." Constantine*, 200 Or App at 683 (emphasis added). A claimant leaves work on "the date [that] the employer-employee relationship is severed." OAR 471-030-0038(1)(a). Here, although the EAB never made an explicit finding on the exact date claimant left work, implicit in its determination that claimant quit in part because she was upset about the statements the owner made "about her and her husband *in the text messages he sent her on January 24"* is the conclusion that claimant quit on or after January 24. (Emphasis added.) Thus, when considering whether claimant had a reasonable alternative to leaving work, the EAB had to determine that its proposed alternative existed after claimant received the owner's messages on January 24. It did not.

Instead, the EAB's conclusion that "[c]laimant had the reasonable option of attempting to discuss her concerns with the owner" was solely based upon claimant's failure (1) to reach out to the owner to discuss the negative statements that he had made about her husband *before* January 24 and (2) to respond to the owner's text and telephone messages before that date. At that time, the owner's interactions with claimant were not hostile. The hostile nature of the owner's text messages on January 24, which threatened claimant with police action, marked a substantial change in claimant and the owner's employee-employer relationship and, as the EAB recognized, precipitated claimant's decision to quit, at least in part. By basing its conclusion on the owner's and claimant's actions before January 24, the EAB ignored the

severe nature of the January 24 messages and, thus, failed to address whether claimant had a reasonable alternative to quitting *"at the time she left work."* Consequently, because of that failure, the EAB's decision lacks substantial reason.

Even had the EAB properly considered whether claimant had a reasonable alternative to quitting "at the time she left work," the EAB would have been obligated to consider the independent effect of the owner's January 24 text messages on its conclusion that "claimant failed to show that [discussing her concerns with the owner] was a futile act." The EAB also failed to address that issue.

When a record "present[s] the issue of whether a discussion of reasonable alternatives to leaving work" with the employer "would have been useless," the EAB "must *** address that question." *Westrope*, 144 Or App at 170. For example, in *Nielsen v. Employment Dept.*, 263 Or App 274, 278, 328 P3d 707 (2014), we held that the EAB erred in concluding that the claimant could have complained to her employer about unpaid wages as a reasonable alternative to leaving work where the record indicated that "it would have been useless or even dangerous *** to do so." We noted that the "uncontested evidence demonstrate[d] that [the] employer was unwilling to pay overtime to workers who complained about their pay" and that the claimant had witnessed former staff members get into "physical brawl[s]" with the owner over that issue. *Id.* As a result, we reversed the EAB's decision. *Id.*

Similarly, in *Strutz v. Employment Dept.*, 247 Or App 439, 443, 270 P3d 357 (2011), we held that the EAB's conclusion that the claimant "could have raised his concerns [with his employer's failure to give its customers' credit for their expired products] directly with [his supervisor]" lacked substantial reason because the EAB "fail[ed] to explain *** what difference it would have made for [the] claimant to raise his concerns with his superiors" when his supervisor had "accompanied [the] claimant on his delivery route and reaffirmed [the] employer's [questionable] policy." Consequently, because the EAB failed to address whether its "reasonable alternative" would have been useless, we reversed and remanded the EAB's decision. *Id.* at 444.

We recognize that here, unlike in *Westrope, Nielsen,* and *Strutz,* the EAB did conclude that "claimant failed to show that [discussing her concerns with the owner] was a futile act." However, as we discussed above, the EAB erroneously based that conclusion solely upon the owner's and claimant's actions *before* claimant received the January 24 text messages rather than on their actions "at the time [claimant] left work." Thus, the EAB's futility conclusion can only be read as applying *before* claimant received the owner's January 24 messages.

The owner's statements in the January 24 text messages, like the actions of the employer in *Nielsen* and the supervisor in *Strutz* and unlike the owner's previous messages to claimant, "present the issue of whether a discussion of reasonable alternatives to leaving work" with the employer "would have been useless." *Westrope,* 144 Or App at 170. As we noted, the January 24 text messages reflect a drastic change in claimant and the owner's relationship. In contrast to the owner's previous communications, the owner's January 24 text messages were "hostile in tone." In them, the owner both called claimant and her husband "bad people" and told claimant that he was calling the police on her. In fact, as the EAB recognized, those final messages, at least in part, brought about claimant's decision to quit. Due to the severe and threatening nature of those messages and their effect on claimant, the EAB was obligated to discuss the effect of those messages on its conclusion that "claimant failed to show that [discussing her concerns with the owner] was a futile act." The EAB did not do that. Therefore, because the EAB failed to address that issue, the EAB's decision lacks substantial reason.

In sum, the EAB's decision lacks substantial reason because the EAB both failed to consider whether claimant had a "reasonable alternative" to voluntarily leaving work *"at the time she left work"* and failed to take into consideration the independent effect of the owner's January 24 text messages on its conclusion that "claimant failed to show that [discussing her concerns with the owner] was a futile act." As a result, we must reverse and remand the decision.

Reversed and remanded.