AOYAGI, J.
*503 *701 This administrative matter regarding the denial of unemployment benefits is before us for the second time. In our first opinion, we reversed and remanded an order of the Employment Appeals Board (EAB), denying unemployment benefits to claimant, on the ground that it lacked substantial reason. See Kay v. Employment Dept. , 284 Or. App. 167, 169, 391 P.3d 969 (2017) ( Kay I ). On remand, the EAB issued a new order. For the reasons that follow, we conclude that the EAB's new order also lacks substantial reason and, accordingly, reverse and remand.
The EAB found the following facts. Claimant worked for Salmon River Contractors, Inc. (Salmon River) for several years. Her husband also worked for Salmon River, as a truck driver, until 2014. Around the second week of January 2015, claimant, who was still employed by Salmon River, learned that Salmon River's owner had been giving negative employment references to prospective employers of claimant's husband. Specifically, she discovered that the owner had been telling prospective employers that claimant's husband was a drug addict and had damaged a company truck. Claimant experienced severe stress as a result of that discovery, as she believed that the owner's statements were preventing her husband from obtaining employment. On January 20, 2015, claimant left work with a migraine headache caused by the stress.
For the next four days, claimant did not come to work. Each day, she spoke with a coworker, Contray, who was Salmon River's estimator and crew leader, about the situation and her dissatisfaction with the owner. She did not say whether she was going to return to work. During the same period, the owner sent several text messages to claimant and left several voicemails for her, asking how she was feeling and when she was going to return to work, to which claimant did not respond.
On January 24, 2015, the owner sent claimant two text messages. The first text message stated: "You and me can talk all the shit you want, but I'm still 36 years old with *702 a multi-million dollar company and you're not. Thanks so much for the sabotage you created when I've done nothing but help you [and your husband]. You are bad people, full of jealousy. It's sad. Thank you both." The second text message stated, "I need these files back in my office, and the rest of my files. I'm calling the police." As a result of those text messages, claimant quit work on January 24, 2015. Salmon River had continuing work available for claimant, and claimant would have returned to work had she not received those text messages from the owner.
The other relevant facts are procedural. Claimant filed for unemployment benefits. The Employment Department notified claimant that it was denying benefits on the basis that she had voluntarily left work without good cause. Under ORS 657.176(2)(c), an individual who "voluntarily left work without good cause" is disqualified from receiving unemployment benefits. "Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work." OAR 471-030-0038(4). It is "an objective standard that asks whether a reasonable and prudent person would consider the situation so grave that he or she had no reasonable alternative to quitting." McDowell v. Employment Dept. , 348 Or. 605, 612, 236 P.3d 722 (2010) (internal quotation marks omitted).
Claimant requested a hearing. After the hearing, at which both claimant and the owner testified, an administrative law judge (ALJ) affirmed the department's decision. The EAB later affirmed the ALJ's decision. Essentially, the EAB concluded that claimant *504 had not shown that the owner's conduct had "created a situation of such gravity that [claimant] had no reasonable alternative but to leave work." Kay I , 284 Or. App. at 171, 391 P.3d 969. In particular, according to the EAB, claimant could have tried to discuss her concerns with the owner prior to January 24, 2015, but instead chose not to return his texts and calls, which were not hostile prior to January 24, 2015. Id. Having made that choice, the EAB concluded, claimant had failed to show that it would have been futile to try to talk to the owner in the days leading up to January 24, 2015. Id . *703 Claimant sought judicial review, arguing, among other things, that the EAB's order lacked substantial reason with respect to the issue of good cause. Id . at 171-72, 391 P.3d 969. In accordance with the standard of review in ORS 183.482 (8)(c), we review an agency's findings of fact for substantial evidence in the record, and we review the conclusions that the agency draws from those facts for substantial reason, which means that the agency's "conclusions must reasonably follow from the facts found." Kay I , 284 Or. App. at 172, 391 P.3d 969. In Kay I , we agreed with claimant that the EAB's order lacked substantial reason, explaining,
"The EAB's decision lacks substantial reason because the EAB failed to consider whether claimant had a 'reasonable alternative[ ]' to voluntarily leaving work 'at the time she left work .' Constantine v. Employment Dept. , 200 Or. App. 677, 683, 117 P.3d 279 (2005) (emphasis added). Had the EAB reached that issue, it would have been obligated to address whether the owner's January 24 text messages 'present[ed] the issue of whether a discussion of reasonable alternatives to leaving work' with her employer 'would have been useless.' Westrope v. Employment Dept. , 144 Or. App. 163, 170, 925 P.2d 587 (1996). The EAB did not consider that question either. Because the EAB failed to address both questions, we reverse and remand."
Kay I , 284 Or. App. at 172-73, 391 P.3d 969.
Therefore, in Kay I , we remanded for the EAB to address (1) whether claimant had a reasonable alternative to quitting work after she received the owner's hostile text messages of January 24, 2015, and (2) whether it would have been futile for claimant to try to discuss the situation with the owner given the text messages. Id . at 173-75, 391 P.3d 969. The January 24 messages marked a "substantial" and "drastic" change in claimant's relationship with her employer. Id . at 173, 175, 391 P.3d 969. "By basing its conclusion on the owner's and claimant's actions before January 24, the EAB ignored the severe nature of the January 24 messages and, thus, failed to address whether claimant had a reasonable alternative to quitting 'at the time she left work .' " Id . at 173-74, 391 P.3d 969 (first emphasis added, second emphasis in original, and citation omitted). Similarly, it failed to consider the January 24 messages as part of its futility analysis. Id . at 175, 391 P.3d 969. Accordingly, *704 we reversed and remanded the EAB's order for lack of substantial reason. Id .
Two months after we issued our decision in Kay I , the EAB issued a new order, again affirming the denial of benefits. "Based on a de novo review of the entire record in this case," the EAB made the findings described at the beginning of this opinion, and then laid out its legal conclusions and reasoning based on those findings. With regard to the latter, the EAB first concluded that claimant's work separation was voluntary in nature because she quit on January 24, 2015. The EAB then addressed good cause. Because the EAB's good-cause analysis goes to the heart of our review, we set it out in its entirety:
"Here, claimant quit work because the employer's owner sent her text messages in which he accused claimant of trying to 'sabotage' the employer's business, called claimant and her husband 'bad people,' and threatened police action, apparently over some issue with files, an issue about which claimant knew nothing. Because the record contains no evidence that the employer displayed any hostility toward claimant prior to January 24, the text messages clearly indicated a marked change for the worse in the relationship between claimant and the owner, as noted above. We find that the owner's text messages created a grave situation by indicating to claimant that her relationship with the employer *505 was irremediably broken. Because the owner's text messages resulted from his frustration over claimant's failure to notify the owner about her absences from work from January 21 through 23, 2015, and her failure to respond to the owner's repeated phone calls and text messages in which he inquired about her well-being and prospects for returning to work, we next consider claimant's culpability in creating the grave situation that resulted in her work separation under OAR 471-041-0038(4).
"Claimant asserted that she did not respond to the owner's text and phone messages because she maintained regular contact with the crew leader from January 21 through 23, and by doing so, 'felt like I was still in touch with the Company, just not in touch with [the owner].' Prior to January 20, however, claimant understood the need to keep the owner informed of her work schedule: she regularly sent him text messages if she was going to be late to or absent from work. We therefore find it implausible that *705 claimant could reasonably or in good faith have believed that she need not respond to the owner's repeated text and phone messages because she remained in contact with a coworker. Nor did claimant show that she had no reasonable alternative but to fail to respond to the owner's text and telephone messages. Because claimant's actions in refusing to respond to the owner's attempts to contact her were not those of a reasonable and prudent person, claimant did not demonstrate that she had good cause for creating the gravity of the situation that resulted in her resignation. Claimant therefore voluntarily left work without good cause."
(Emphasis in original; internal record citation omitted.)
Claimant seeks judicial review. Her first assignment of error challenges the EAB's conclusion that she left her employment voluntarily, and her second assignment of error challenges the EAB's conclusion that she left her employment without good cause. We begin with the second assignment of error and, because it is dispositive, do not address the first assignment.
The EAB does appear to have addressed the two issues identified in Kay I . See Kay I , 284 Or. App. at 173-75, 391 P.3d 969 (identifying issues for consideration on remand). In concluding that "the owner's text messages created a grave situation by indicating to claimant that her relationship with the employer was irremediably broken " (emphasis added), the EAB appears to have now concluded that, once the owner sent the hostile text messages to claimant on January 24, 2015, claimant did not have a reasonable alternative to quitting and that talking to the owner to try to resolve the situation and continue her employment would have been futile.
That is not, however, the end of the EAB's analysis. The order goes on to state that "the owner's text messages resulted from his frustration over claimant's failure to notify the owner about her absences from work from January 21 through 23, 2015, and her failure to respond to the owner's repeated phone calls and text messages in which he inquired about her well-being and prospects for returning to work." The EAB therefore proceeds to consider "claimant's culpability in creating the grave situation that resulted in her work separation" and ultimately concludes that claimant *706 was at fault for the situation on January 24, 2015, because "a reasonable and prudent person" would have responded to the owner's earlier messages regarding when she planned to return to work.
We agree with claimant that the EAB's analysis of claimant's "culpability" for the situation on January 24, 2015, is flawed. There is no evidence to support the EAB's finding that the owner's "frustration" over his unreturned messages was the impetus for his January 24 text messages. The EAB has not appeared on appeal, but claimant has affirmatively represented that there is no evidence in the record as to the owner's state of mind when he sent the January 24 text messages, and we have found none. Moreover, although it is sometimes possible to reasonably infer the impetus for a text message from its contents and surrounding circumstances, that is not the case here. Based on their content, the January 24 text messages *506 appear to be unrelated to claimant's failure to return the owner's messages over the previous few days. The owner did not mention any unreturned messages. Rather, he accused both claimant and her husband of creating "sabotage" despite everything that he had done for them, of being "bad people," and of being "full of jealousy," and he stated that he was calling the police in connection with unspecified files that he apparently believed that claimant had removed from his office. It is unclear whether the January 24 text messages stemmed from a prior dispute between claimant and the owner[1] or something else entirely, but nothing in the record suggests that they were related to his unreturned messages about claimant's absence.
Because the EAB's finding that the owner's frustration about claimant not returning his messages was the impetus for his January 24 text messages is not supported by substantial evidence, but rather appears to be mere speculation, the reasoning in EAB's decision necessarily fails. The EAB's subsequent conclusions-that claimant's failure *707 to return the owner's earlier messages was unreasonable and that claimant therefore was responsible for the owner's hostility on January 24-are tied directly to its finding that it was claimant's failure to return the earlier messages that drove the owner to send the hostile text messages on January 24. The order therefore lacks substantial evidence and substantial reason.[2]
Accordingly, we remand to the EAB to determine, again, whether claimant had good cause to leave her employment on January 24, 2015, and, if so, complete its determination of her eligibility for unemployment benefits. The EAB has already found that claimant left her employment on January 24 after receiving the hostile text messages from the owner. The EAB also appears to have already concluded that, once the owner sent the January 24 messages, claimant did not have a reasonable alternative to quitting and that trying to talk to him to resolve the situation and continue her employment would have been futile. As such, the EAB's task on remand may be limited. Nonetheless, it is the EAB's task, and we decline claimant's request that we complete it ourselves to avoid the possibility of another review proceeding.
Reversed and remanded.

In addition to its findings regarding the dispute between claimant and the owner regarding employment references for claimant's husband, the EAB found that, at some time prior to January 20, 2015, the owner had accused claimant of "engaging in activities that 'cost [the employer] all this money,' " after which claimant met with Contray and demonstrated that the accusations were false.

We do not mean to suggest that, if there were evidence on that point, the result would necessarily be different. The EAB appears to be equating the owner having good cause to terminate claimant's employment (even though he did not terminate it) with claimant lacking good cause to voluntarily leave work. The EAB cites no relevant legal authority for that approach. Given the lack of substantial evidence, however, we need not address that aspect of EAB's reasoning.